**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
Sue J. Nam
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

-    and -

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
*spencer@spencersheehan.com*
505 Northern Boulevard, Suite 311
Great Neck, New York 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-6456

*Counsel for Plaintiff and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Jewel Rankin, individually on behalf of and all others similarly situated,<br><br>                                  Plaintiff,<br><br>-against-<br><br>Arca Continental S.A.B. de C.V., (d/b/a Arca Continental) and Old Lyme Gourmet Company (d/b/a Deep River Snacks)<br><br>                                  Defendants. | Case No. 20-cv-1756<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Jewel Rankin ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class," as defined below), brings this Class Action Complaint against Arca Continental S.A.B. de C.V., doing business as Arca Continental, and Old Lyme Gourmet Company, doing business as Deep River Snacks (together, "Defendants"), and alleges the following based upon Plaintiff's own personal knowledge and the investigation of Plaintiff's counsel. Plaintiff believes substantial evidentiary support exists for the allegations set forth herein and seeks a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the *United States Code*), under 28 U.S.C. § 1332(d) because the aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and both Plaintiff and other members of the putative Class are citizens of States different from Defendants. Furthermore, Plaintiff alleges "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

2. This Court has personal jurisdiction over Defendants for reasons including but not limited to the following: Plaintiff's claims arise out of Defendants' conduct within this jurisdiction, including Defendants' placement of deceptive "Non GMO Ingredients" seal of approval representations on the labels of the products at issue, upon which Plaintiff relied when she purchased the products in New York.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Plaintiff's purchase of Defendants' products in this District based on Defendants' deceptive "Non GMO Ingredients" representations.

## <u>SUBSTANTIVE ALLEGATIONS</u>

4.      This is a proposed class action against Defendants Arca Continental S.A.B. de C.V., doing business as Arca Continental, and Old Lyme Gourmet Company, doing business as Deep River Snacks, for misleading consumers about Defendants' products that bear the following "Non GMO Ingredients" certificate of approval ("Seal") on the packaging (collectively, the "Products") that appears to be that of an independent third party, when it in fact is not:



5.    This false and misleading Seal currently appears on the following of Defendants' Products:

 











6.    In recent years, consumers have become significantly more aware of, and sensitive to, products that have been approved by independent third parties, and they buy those products based upon the seals of the independent third parties.

7.    Additionally, consumers have become significantly more aware of, and sensitive to, genetically modified organisms ("GMOs") in their food. Many consumers want to avoid GMOs for a variety of reasons, including, but not limited to, GMOs' possible negative impact on the environment. As a result, many consumers try to buy products that are not derived from GMOs, and a movement has developed demanding consumer products that have non-GMO ingredients.

8.    In an attempt to meet consumers' demand for non-GMO products, an industry of independent, third-party validation companies has developed. These independent companies review the ingredients in products and assure consumers with their seal that the products do not contain GMOs and do not come from animals fed GMO food. Thus, obtaining the approval from an independent third party allows companies to obtain an advantage in the marketplace over their

competitors, in order to sell more products and charge higher prices.

9.  Recognizing the value of independent certification in the marketplace, the Federal Trade Commission ("FTC") has warned companies against making representations involving independent certification because they are misleading to consumers and has issued guidelines for companies to follow in order not to deceive consumers. *See* 16 C.F.R. § 260.1. As stated in the FTC guidelines against deceptive marketing regarding "Certifications and Seals of Approval":

> ***It is deceptive to misrepresent, directly or by implication, that a product, package, or service has been endorsed or certified by an independent third party.***

16 C.F.R. § 260.6(a) (emphasis added).

10.  In violation of these principles, Defendants have represented to consumers that several of the products they sell have been verified by an independent third party as not containing GMO ingredients, by affixing a  Non GMO Ingredients Seal on the Products.

11.  Unfortunately for consumers, the Non GMO Ingredients representations by Defendants are false and misleading. Based upon counsel's investigation, the truth is that the Non GMO Ingredients Seal is not a designation bestowed by a non-profit group, or even a neutral third party, ***but instead is the work of Defendants themselves***. In other words, the Non GMO Ingredients Seal of approval is nothing more than Defendants touting their own Products.

12.  In developing the Non GMO Ingredients seal, Defendants intentionally mimicked the appearance of an independent verifier's seal, such as the seal of the Non-GMO Project.

13.  The Non-GMO Project, headquartered in Bellingham, Washington, is a not-for-profit organization founded in 2007 that bases its work upon a "rigorous scientific foundation and world-class technical support." *See History*, WWW.NONGMOPROJECT.ORG (2016), https://www.nongmoproject.org/about/history/. The Non-GMO Project works with the Global ID Group, which are "the world leaders in non-GMO testing, certification, and consulting." *Id.*

14.  The Non-GMO Project runs the Product Verification Program, which verifies that products are not derived from GMO crops and verifies that milk and meat are not derived from animals that were fed GMO crops. The Non-GMO Project's Product Verification Program is

widely recognized and has more than 3,000 verified brands, representing over 43,000 products and more than $19.2 billion in sales. *Id.*

15.     If a company's product meets the Non-GMO Project standard, the product receives a seal of approval that it may place on the front of the product packaging. *See* Image 1.

16.     Looking to profit off consumer desire for independently validated products, Defendants have created a deceptive Non GMO Ingredients Seal of approval label that mimics the Non-GMO Project seal. *See* Image 2.

     

        *Image 1*                    *Image 2*

17.     As seen below, both of these seals are used prominently to market food, indicating to consumers that the products have been validated by independent parties as being free of GMOs:





 

18.     Moreover, ingredients that constitute many of the Products are derived from GMOs. For example, Defendants' Products that contain dairy come from cows fed GMO grains. This violates the Non-GMO Project standard, which **does not allow for its seal of approval to be placed on dairy-based products that could be from animals fed GMO feed**. *See Animal-Derived Ingredients*, www.NonGMOProject.org (2016), https://www.nongmoproject.org/high-risk/animal-derived-ingredients/.

19.     Defendants avoid the Non-GMO Project's feed standard by using their own, self-created Non GMO Ingredients Seal, thereby creating confusion and deceiving consumers. Defendants' own "standard" allows for the use of GMO feed for dairy animals. The Non-GMO Project's independent standard does not.

20.     As a result of this deceptive label, consumers paid a significant premium to

purchase non-GMO Products to avoid the well-known health and environmental risks associated with GMO products. Consequently, for the reasons given above, consumers did not receive the benefit of the bargain when they purchased the Products.

21.    Plaintiff brings this suit to now end Defendants' deceptive practice and to recover the ill-gotten gains obtained by Defendants through this deception.

## PARTIES

### Plaintiff

22.    Plaintiff Jewel Rankin is an adult resident of Brooklyn, New York.

23.    Plaintiff purchased Defendants' Aged Cheddar Horseradish Product containing the Non GMO Ingredients Seal in the Winter of 2018 from a Stop and Shop store on Atlantic Avenue in Brooklyn, New York.

24.    When given a choice between comparable products, Plaintiff purposefully chooses non-GMO products when making purchasing decisions and relies on packaging representations to determine if products are certified as non-GMO by an independent, third-party verifier.

25.    The packing of the Product that Plaintiff purchased contained the Non GMO Ingredients Seal.

26.    Plaintiff saw and read the Non GMO Ingredients Seal prior to purchasing the Product.

27.    Plaintiff believed the Product Plaintiff bought was verified to be non-GMO by an independent third-party verifier. Plaintiff relied on the Non GMO Ingredients Seal in making Plaintiff's purchase decisions and would not have purchased the Product had Plaintiff known the Non GMO Ingredients representation was deceptive because the Product were not in fact verified by an independent third party.

28.    The Product that Plaintiff received was not in fact verified by an independent third party and did not meet the standards of independent third-party verification companies such as the Non-GMO Project.

29.    Had Defendants not labeled the Products using the false and misleading Non GMO

Ingredients representation, Plaintiff would not have been willing to buy the Products at all, or pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products.

30.     Plaintiff purchased more of, or paid more for, the Products than Plaintiff would have had Plaintiff known the truth about the Products.

31.     The Products Plaintiff received were worth less than the Products for which Plaintiff paid. Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

32.     Plaintiff is likely to encounter the Products, including the Non GMO Ingredients Fake Seal, again on routine trips to the local grocery store, since Defendants continue to market and sell the Products.

33.     If Plaintiff knew the Product labels, including the Non GMO Ingredients Seal, were truthful and non-misleading, Plaintiff would continue to purchase the Products in the future. At present, however, Plaintiff cannot be confident that the labeling of the Products is, and will be, truthful and non-misleading.

**Defendant Arca Continental S.A.B. de C.V.**

34.     Defendant Arca Continental S.A.B. de C.V. ("Arca"), doing business as Arca Continental, is a *Sociedad Anónima Bursátil de Capital Variable*, i.e., a Mexican publicly traded company.  Arca Continental S.A.B. de C.V.'s headquarters are located at Ave. San Jerónimo 813 Poniente, Codigo Postal 64640 Monterrey, Nuevo León, Mexico.

**Defendant Old Lyme Gourmet Company**

35.     Defendant Old Lyme Gourmet Company, doing business as Deep River Snacks, is a corporation organized under the laws of Connecticut.

36.     Old Lyme Gourmet Company's headquarters are located at 16 Grove Street, Deep River, Connecticut 06417.

37.     Old Lyme Gourmet Company is a wholly-owned subsidiary of Arca.

## **RULE 9(b) ALLEGATIONS**

38.    Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

39.    WHO: Defendants made material misrepresentations and omissions of fact in the labeling, packaging, and marketing of the Products.

40.    WHAT: Defendants made material misrepresentations and omissions by affixing the Non GMO Ingredients Seal of approval to lead consumers to believe the Products have been certified as not having GMO ingredients by a third party rather than Defendants themselves. However, the Non GMO Ingredients Seal in question is not a designation bestowed by a neutral third party, but instead is the creation of Defendants. Defendants intentionally mimicked the seal of a neutral third-party verifier to tout their own Products.

41.    WHEN: Defendants made the material misrepresentations and omissions detailed herein continuously throughout the applicable limitations period.

42.    WHERE: Defendants' material misrepresentations and omissions were made, *inter alia*, on the labeling and packaging of the Products.

43.    HOW: Defendants made written misrepresentations and failed to disclose material facts on the labeling and packaging of the Products, as detailed herein.

44.    WHY: Defendants engaged in the material misrepresentations and omissions detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay a premium for the Products. Defendants profited by selling the Products to millions of unsuspecting consumers nationwide, capitalizing on the growing demand for certified non-GMO products.

## CLASS ALLEGATIONS

45.    Plaintiff brings this action on behalf of the following New York Class and Multi-State Class (collectively "Class") pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure:

> **The Multistate Class.** All persons from the states of Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin and Wyoming who purchased any of Defendants' Products bearing the Non GMO Ingredients seal on the label within the applicable limitations period.

> **The New York Class** - . All persons who purchased any of Defendants' Products bearing the Non GMO Ingredients Seal on the label during the last six years.

> Excluded from the Class are: (a) Defendants, Defendants' board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures

46.    Plaintiff reserves the right to alter the Class definitions as Plaintiff deems necessary at any time to the full extent that the Federal Rules of Civil Procedure, the Local Rules of this District, and applicable precedent allow.

47.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

### Numerosity—Rule 23(a)(1)

48.    Based on the annual sales of the Products and the popularity of the Products, it is readily apparent that the number of consumers in the Class is so numerous that the individual joinder of all of its members is impracticable, if not impossible. Due to the nature of the trade and

commerce involved, Plaintiff believes the total number of Class members is in the thousands and that members of the Class are geographically dispersed across the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

**Commonality and Predominance—Rule 23(a)(2) and (b)(3)**

49.     Common questions of law and fact exist as to all members of the Class, and these common questions predominate over any questions affecting only individual members of the Class.

50.     The common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member include, but are not limited to, the following:

(a)      whether Defendants labeled, marketed, advertised, and/or sold the Products to Plaintiff and those similarly situated using false, misleading, and/or deceptive statements or representations;

(b)      whether Defendants misrepresented material facts in connection with the sales of the Products;

(c)      whether Defendants participated in and pursued the common course of conduct complained of herein;

(d)      whether Defendants' labeling, marketing, advertising, and/or selling of the Products with a Non GMO Ingredients Seal on the label constitute an unfair or deceptive consumer sales practice; and

(e)      whether Defendants were unjustly enriched.

**Typicality—Rule 23(a)(3)**

51.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased a Product bearing the Non GMO Ingredients Seal in a typical consumer setting and sustained damages from Defendants' wrongful conduct. The claims of the members of the class arise from the same course of conduct by Defendants, and the relief sought

is common to Plaintiff and the Class members.

52.     Furthermore, there are no defenses available to Defendants that are unique to Plaintiff.

**Adequacy of Representation—Rule 23(a)(4)**

53.     Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has no interests that conflict with those of the Class.

54.     Plaintiff has retained counsel competent and experienced in litigating complex class actions. Undersigned counsel have represented consumers in a wide variety of actions where they have sought to protect consumers from fraudulent and deceptive business practices.

**Superiority—Rule 23(b)(3)**

55.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the Class is impracticable. Even if individual members of the Class had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice. Furthermore, given the large number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

**Declaratory and Injunctive Relief—Rule 23(b)(2)**

56.     This action is maintainable as a class action under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief respecting the Class as a whole.

14

**Notice**

57.     Plaintiff and Plaintiff's counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## CLAIMS

### FIRST CLAIM

### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Class Members)**

58.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

60.     The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and New York Class Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendants, enjoining it from inaccurately describing, labeling, marketing, and promoting the Products.

61.     Defendants misleadingly, inaccurately, and deceptively present the Products to consumers.

62.     Defendants' improper consumer-oriented conduct—including labeling and advertising the Product with the Fake Seal —is misleading in a material way in that it, *inter alia*, induced Plaintiff and New York Class Members to purchase and pay a premium for Defendants' Products and to use the Products when they otherwise would not have.

63.     Defendants made the untrue or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

64.    Plaintiff and New York Class Members have been injured inasmuch as they paid a premium for Products that - contrary to Defendants' representations.   Accordingly, Plaintiff and New York Class Members received less than what they bargained or paid for.

65.    Defendants' advertising and products' packaging and labeling induced the Plaintiff and New York Class Members to buy Defendants' Products and to pay a premium price for them.

66.    Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class have been damaged thereby.

67.    As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

68.    Plaintiff and Class Members seek actual damages under GBL § 349, as well as statutory damages of $50 per unit purchased pursuant to GBL § 349.

**SECOND CLAIM**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and New York Class Members)**

69.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

71.     N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

72.     Defendants' labeling and advertisements contain untrue and materially misleading statements concerning Defendants' Products inasmuch as they misrepresent that the Products were verified by a third-party and bore the seal of approval from that independent third-party.

73.     Plaintiff and New York Class Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which— contrary to Defendants' representations— did not bear the seal of approval from an independent third-party verifier.  Accordingly, Plaintiff and New York Class Members received less than what they bargained or paid for.

74.     Defendants' advertising, packaging and product labeling induced the Plaintiff and

Class Members to buy Defendants' Products.

75.     Defendants made the untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

76.     Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

77.     Defendant made the material misrepresentations described in this Complaint in Defendants' advertising, and on the Products' packaging and labeling.

78.     Defendants' material misrepresentation was substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

79.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

80.     Plaintiff and New York Class members also are entitled to statutory damages of $500 per unit purchased.

**THIRD CAUSE OF ACTION**
**VIOLATION OF STATE CONSUMER PROTECTION STATUTES**
**(On Behalf of Plaintiff and All Multi-State Class Members)**

81.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

82.     Plaintiff and Multi-State Class Members have been injured as a result of Defendants' violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Multi-State Class Members based on Defendants' fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

83.     Defendants' conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

     a.    **Alaska:** Defendants' practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

     b.    **Arizona:** Defendants' practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq*.

     c.    **Arkansas:** Defendants' practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

     d.    **California:** Defendants' practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq*., and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq*., and California's False Advertising Law, California Business and Professions Code § 17500, *et seq*.

e.  **Colorado**: Defendants' practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.  **Connecticut:** Defendants' practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.  **Delaware:** Defendants' practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.  **District of Columbia:** Defendants' practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.  **Florida:** Defendants' practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.  **Hawaii:** Defendants' practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.  **Idaho:** Defendants' practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.  **Illinois:** Defendants' acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.  **Indiana:** Defendants' practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.    **Kansas:** Defendants' practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq*.

o.    **Kentucky:** Defendants' practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.    **Maine:** Defendants' practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq*. and 10 Me. Rev. Stat. Ann. § 1101, *et seq*.

q.    **Maryland:** Defendants' practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq*.

r.    **Massachusetts:** Defendants' practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s.    **Michigan:** Defendants' practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*.

t.    **Minnesota:** Defendants' practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.    **Missouri:** Defendants' practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.    **Nebraska:** Defendants' practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

w.   **Nevada:** Defendants' practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.   **New Hampshire:** Defendants' practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.   **New Jersey:** Defendants' practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.   **New Mexico:** Defendants' practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.  **North Carolina:** Defendants' practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

bb.  **North Dakota:** Defendants' practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

cc.  **Ohio:** Defendants' practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

dd.  **Oklahoma:** Defendants' practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ee.  **Oregon:** Defendants' practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

ff.  **Pennsylvania:** Defendants' practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq*.

gg.  **Rhode Island:** Defendants' practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

hh.  **South Dakota:** Defendants' practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

ii.  **Texas:** Defendants' practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

jj.  **Utah:** Defendants' practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

kk.  **Vermont:** Defendants' practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

ll.  **Washington:** Defendants' practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

mm.  **West Virginia:** Defendants' practices were and are in violation of West Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq.*

nn.  **Wisconsin:** Defendants' practices were and are in violation of Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq*.

oo.  **Wyoming:** Defendants' practices were and are in violation of Wyoming's Consumer Protection Act, Wyo. Stat. Ann. §40-12-101*, et seq.*

84.  Defendants violated the aforementioned states' unfair and deceptive acts and practices laws by representing that the Products were verified by an independent third-party.

85.  Contrary to Defendants' representations, the Products were not verified by an independent third-party.

86.  Defendants' misrepresentations were material to Plaintiff's and Class Members' decision to pay a premium for the Products.

87.  Defendants made the untrue and misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

88.  As a result of Defendants' violations of the aforementioned states' unfair and deceptive practices laws, Plaintiff and the Multi-State Class Members paid a premium for the Products.

89.  As a result of Defendants' violations, Defendants have been unjustly enriched

Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Multi-State Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

<u>**FOURTH CAUSE OF ACTION**</u>

<u>**BREACH OF EXPRESS WARRANTY**</u>
**(On Behalf of Plaintiff and All Class Members)**

90.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.    Defendants provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact that the Products were certified by a third-party verifier, when, in fact, they were not.

92.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

93.    These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

94.    Plaintiff and Class Members reasonably relied upon the Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Products.

95.    Within a reasonable time after they knew or should have known of Defendants' breach, Plaintiff, on behalf of himself and Class Members, placed Defendants on notice of its breach, giving Defendants an opportunity to cure its breach, which they refused to do.

96.    Defendants thereby breached the following state warranty laws:
a.    Code of Ala. § 7-2-313;

b.    Alaska Stat. § 45.02.313;

c.     A.R.S. § 47-2313;

d.     A.C.A. § 4-2-313;

e.     Cal. Comm. Code § 2313;

f.     Colo. Rev. Stat. § 4-2-313;

g.     Conn. Gen. Stat. § 42a-2-313;

h.     6 Del. C. § 2-313;

i.     D.C. Code § 28:2-313;

j.     Fla. Stat. § 672.313;

k.     O.C.G.A. § 11-2-313;

l.     H.R.S. § 490:2-313;

m.     Idaho Code § 28-2-313;

n.     810 I.L.C.S. 5/2-313;

o.     Ind. Code § 26-1-2-313;

p.     Iowa Code § 554.2313;

q.     K.S.A. § 84-2-313;

r.     K.R.S. § 355.2-313;

s.     11 M.R.S. § 2-313;

t.     Md. Commercial Law Code Ann. § 2-313;

u.     106 Mass. Gen. Laws Ann. § 2-313;

v.     M.C.L.S. § 440.2313;

w.     Minn. Stat. § 336.2-313;

x.     Miss. Code Ann. § 75-2-313;

y.     R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313;

xx.    Wyo. Stat. § 34.1-2-313.

97.    As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**

**Unjust Enrichment**
**(On Behalf of Plaintiff and the New York Class)**

98.    Plaintiff re-alleges and incorporates the paragraphs prior to the causes of action of this Class Action Complaint as if set forth herein.

99.    As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Products, Defendant was enriched, at the expense of Plaintiff and the other New York Class members through the payment of the purchase price for Defendant's Products.

100.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the other New York Class members in light of the fact that the Products purchased by Plaintiff and the other New York Class members were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other Class members for the monies paid to Defendant for such Products.

101.    Therefore, Plaintiff prays for relief as set forth below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, respectfully requests the Court to enter an Order:

A.      certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B.      declaring that Defendants are financially responsible for notifying the Class members of the pendency of this suit;

C.      declaring that Defendants have committed the violations of law alleged herein;

D.      providing for any and all injunctive relief the Court deems appropriate;

E.      awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

F.      providing for any and all equitable monetary relief the Court deems appropriate;

G.      awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

H.      awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees;

I.      awarding pre- and post-judgment interest to the extent the law allows; and

J.      providing such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated:  April 9, 2020                                    **REESE LLP**

*/s/ Michael R. Reese*
Michael R. Reese
*mreese@reesellp.com*
Sue J. Nam
*snam@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

- and –

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
*spencer@spencersheehan.com*
505 Northern Boulevard, Suite 311
Great Neck, New York 11021
Telephone:      (516) 303-0552
Facsimile: (516) 234-6456

*Counsel for Plaintiff and the Classes*