UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X

  JEWEL RANKIN,

                Plaintiff,

        -against-

ARCA CONTINENTAL S.A.B. de C.V.,
d/b/a ARCA CONTINENTAL, and OLD
LYME GOURMET COMPANY, d/b/a
DEEP RIVER SNACKS,

                Defendants.

----------------------------------------------------------X

**<u>REPORT AND</u>**
**<u>RECOMMENDATION</u>**
20-CV-1756 (ENV) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Plaintiff Jewell Rankin ("Plaintiff") initiated this putative class action against

Defendants Arca Continental S.A.B. de C.V., doing business as Arca Continental

("Arca"), and Old Lyme Gourmet Company, doing business as Deep River Snacks

("Old Lyme"), on April 9, 2020. (*See* Complaint ("Compl."), ECF No. 1.) Plaintiff alleges

that the "Non GMO Ingredients" emblem Defendants used to convey the absence of

genetically modified organisms in their products misled consumers because it

suggested independent third-party verification where there was none. (*See id.* ¶¶ 4–5,

11–12, 25–28.) Plaintiff claims that Defendants' practices violated New York General

Business Law ("GBL") §§ 349 and 350, as well as various consumer protection statutes

in other states, and constituted a breach of express warranty and unjust enrichment. (*Id.*

¶¶ 58–101.)

      Currently pending before the Court is Defendant Old Lyme's motion to dismiss,

which the Honorable Eric N. Vitaliano referred to the undersigned Magistrate Judge for

a report and recommendation. (Motion to Dismiss ("Mot."), ECF No. 32; Dec. 8, 2021

ECF Order.) For the reasons set forth below, the Court respectfully recommends that Defendant's motion be granted in part and denied in part.[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff Jewel Rankin is a Brooklyn resident. (Compl., ECF No. 1, ¶ 22.) Defendant Arca is a publicly traded company headquartered in Mexico. (*Id.* ¶ 34.)[3] Defendant Old Lyme is a corporation organized under the laws of Connecticut[4] and a wholly-owned subsidiary of Arca. (*Id.* ¶¶ 35–37.) Plaintiff purchased Defendant's Aged Cheddar Horseradish flavored chips in Brooklyn in 2018, believing that they were "verified to be non-GMO by an independent third-party verifier." (*Id.* ¶¶ 23, 27.) Plaintiff alleges that when given a choice, "she purposefully chooses non-GMO products . . . and relies on packaging representations to determine if products are certified as non-GMO by an independent, third-party verifier." (*Id.* ¶ 24.) Had she known the chips she bought were not verified by an independent third party, she

---

[1] This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (*See* Compl., ECF No. 1, ¶¶ 1, 22, 34–37.) Plaintiff also alleges jurisdiction under 28 U.S.C. § 1332(d), pursuant to the Class Action Fairness Act of 2005. (*Id.* ¶ 1.) Plaintiff has not yet sought class certification.

[2] The facts alleged by Plaintiff in the complaint are assumed to be true for purposes of this motion. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2010); *Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 359 n.1 (E.D.N.Y. 2021).

[3] On August 24, 2020, the Honorable Peggy Kuo directed Plaintiff "to serve Arca Continental S.A.B. de C.V. or file a letter explaining why it has not been served." (Aug. 24, 2020 ECF Minute Entry and Order.) On October 19, 2020, Plaintiff filed a status report representing that Defendant Arca had not yet been served, and that Plaintiff was considering amending her complaint to substitute a domestic entity of Arca called "Arca Continental Foods, LLC." (Oct. 19, 2020 Status Report, ECF No. 19.) Based on the Court's independent review of the docket, it appears that, to date, Plaintiff has neither amended her complaint nor served Arca. As directed below, Plaintiff shall provide an update to the Court as to the status of Defendant Arca. However, the motion to dismiss presently before the Court is filed solely on behalf of Defendant Old Lyme, and the Court therefore refers only to Old Lyme herein.

[4] Defendant Old Lyme states that the company's principal place of business is in Georgia, not Connecticut. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem."), ECF No. 34, at 3 n.2, 25 n.7.) However, as Defendant notes, this distinction is not material for resolving Defendant's motion. (*See id.*)

2

claims she would not have been willing to pay the same amount for them or would not have purchased them at all. (*Id.* ¶¶ 27, 29–31.)

Plaintiff also alleges that "consumers have become significantly more aware of, and sensitive to, products that have been approved by independent third parties, and they buy those products based upon the seals of the independent third parties." (*Id.* ¶ 6.) According to Plaintiff, "many consumers try to buy products that are not derived from GMOs," which in turn, has produced "an industry of independent, third-party validation companies" to meet such demand. (*Id.* ¶¶ 7–8.) One such third party is the Non-GMO Project, a nonprofit that runs a "verification program" to certify that "products are not derived from GMO crops" or "animals that were fed GMO crops." (*Id.* ¶¶ 13–14.) Products that meet the Non-GMO Project's standards receive permission to place a seal on the front of the approved product's packaging:





3

(*Id.* ¶¶ 15–17.)[5] In this case, Plaintiff claims that Defendant "intentionally mimicked the appearance of an independent verifier's seal, such as the seal of the Non-GMO Project," when formulating its own emblem:





(*Id.* ¶¶ 5, 10–12, 17.)

---

[5] For the sake of clarity, the Court takes judicial notice of, and includes here, the entirety of the Non-GMO Project seal, as depicted on the front of the product packaging included in Plaintiff's complaint. (*See* Compl., ECF No. 1, ¶¶ 16–17; Def.'s Mem., ECF No. 34, at 2; *id.* at 3 n.1.) *See also Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, at *5 (S.D.N.Y. Mar. 18, 2022). The Court notes that the image included in Plaintiff's complaint omitted the word "verified" and the website address of the Non-GMO Project. (Compl., ECF No. 1, ¶ 16.)

Further, Plaintiff alleges that Defendant created its non-GMO graphic "to profit off consumer desire for independently validated products," when in fact, Defendant's products do not meet the Non-GMO Project's standards for receiving such approval and verification. (*Id*. ¶¶ 16, 18–19 (noting that Defendant's products "contain dairy . . . from cows fed GMO grains," whereas the Non-GMO Project "does not allow for its seal of approval to be placed on dairy-based products that could be from animals fed GMO feed").) Plaintiff claims that Defendant's deceptive practices lead consumers to pay "a significant premium" for non-GMO products without receiving "the benefit of the bargain," i.e., "avoid[ing] the well-known health and environmental risks associated with GMO products." (*Id*. ¶ 20.)

As noted, Plaintiff initiated this putative class action on April 9, 2020. (*See generally id*.) Following the parties' engagement in limited discovery and unsuccessful settlement negotiations, Judge Vitaliano granted Defendant Old Lyme's motion for leave to file the instant motion to dismiss. (Aug. 23, 2021 ECF Order; *see also, e.g.*, July 27, 2021 Status Report, ECF No. 24 (summarizing procedural history).) Defendant Old Lyme filed its fully briefed motion to dismiss on December 7, 2021, which Judge Vitaliano thereafter referred to the undersigned Magistrate Judge for a report and recommendation. (*See* Mot., ECF No. 32; Pl.'s Mem. in Opp'n to Mot. ("Pl.'s Mem."), ECF No. 33; Def.'s Mem. in Supp. of Mot. ("Def.'s Mem."), ECF No. 34; Def.'s Reply in Supp. of Mot. ("Def.'s Reply"), ECF No. 35; Dec. 8, 2021 ECF Order; *see also* Def.'s Suppl. Authority, ECF No. 36; Pl.'s Resp. to Def.'s Suppl. Authority, ECF No. 38.)

For the reasons set forth below, the Court respectfully recommends that Defendant's motion be granted in part and denied in part.

## DISCUSSION

### I.   Legal Standards

#### A.  Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires establishing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (explaining that courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations"); *Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 364 (E.D.N.Y. 2021) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quoting *Twombly*, 550 U.S. at 555)).

At the motion to dismiss stage, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). When deciding a motion to dismiss, the court does not "weigh the evidence that might be presented at trial but merely determines whether the complaint itself is legally sufficient." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012). In addition, although the scope of review for Rule 12(b)(6) motions is generally limited to the complaint, courts may consider "'documents

incorporated in [the complaint] by reference' and documents which are 'integral to plaintiff['s] claim.'" *Benny v. City of Long Beach*, No. 20-CV-1908 (KAM), 2021 WL 4340789, at *5 (E.D.N.Y. Sept. 23, 2021) (alterations in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991)); *see also Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, at *1 (S.D.N.Y. Mar. 18, 2022).

## B.  New York General Business Law §§ 349, 350

"New York's General Business Law prohibits the use of '[d]eceptive acts or practices' and '[f]alse advertising' 'in the conduct of any business, trade or commerce.'" *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (summary order) (quoting N.Y. Gen. Bus. Law §§ 349, 350); *see also Scholder v. Sioux Honey Ass'n Coop.*, No. 16-CV-5369 (GRB), 2022 WL 125742, at *2 (E.D.N.Y. Jan. 13, 2022); *Gavilanes v. Gerber Prod. Co.*, No. 20-CV-5558 (FB), 2021 WL 5052896, at *5 (E.D.N.Y. Nov. 1, 2021). "To successfully assert a claim under either section, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quotation marks omitted)). Because "[t]he standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to § 349," courts often analyze such claims together. *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020); *see also Troncoso v. TGI Friday's Inc.*, No. 19-CV-2735 (KPF), 2020 WL 3051020, at *5 (S.D.N.Y. June 8, 2020).

To survive a motion to dismiss, a plaintiff's allegations must give rise to an inference "that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018); *see also Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 580–81

(S.D.N.Y. 2021); *Lugones v. Pete & Gerry's Organic, LLC*, 440 F. Supp. 3d 226, 242

(S.D.N.Y. 2020) ("[P]laintiffs must do more than plausibly allege that a label might

conceivably be misunderstood by some few consumers." (quotation marks omitted)).

Courts apply an objective standard when conducting this inquiry. *Barton v. Pret A

Manger (USA) Ltd.*, 535 F. Supp. 3d 225, 236 (S.D.N.Y. 2021) (citing *Nick's Garage, Inc. v.

Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017)). Further, when determining

"whether a reasonable consumer would have been misled by a particular

advertisement, context is crucial." *Mantikas*, 910 F.3d at 636. Therefore, courts consider

"the challenged advertisement as a whole, including disclaimers and qualifying

language." *Id.*

   Notably, this inquiry "is usually a question of fact that should not be resolved on

a motion to dismiss." *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261,

278 (E.D.N.Y. 2021); *see also Mogull v. Pete & Gerry's Organics, LLC*, No. 21-CV-3521 (VB),

2022 WL 602971, at *3 (S.D.N.Y. Feb. 28, 2022); *Newton v. Kraft Heinz Foods Co.*, No. 16-

CV-4578 (RJD) (RLM), 2018 WL 11235517, at *3 (E.D.N.Y. Dec. 18, 2018). In certain cases,

however, a court may decide as a matter of law that "an allegedly deceptive

advertisement would not have misled a reasonable consumer." *Fink v. Time Warner

Cable*, 714 F.3d 739, 741, 742 (2d Cir. 2013) (per curiam) (dismissing plaintiffs' claims

because they "lack[ed] the facial plausibility necessary to survive a motion to dismiss");

*see also Scholder*, 2022 WL 125742, at *3; *Podpeskar v. Dannon Co., Inc.*, No. 16-CV-8478

(KBF), 2017 WL 6001845, at *3 (S.D.N.Y. Dec. 3, 2017).

## II.   Analysis

   Defendant Old Lyme contends that Plaintiff has failed to adequately allege that a

reasonable consumer could be misled by its "Non GMO Ingredients" emblem. First,

Defendant argues that Plaintiff has not alleged that the graphic falsely or inaccurately

8

states that its products contain non-GMO ingredients. (Def.'s Mem., ECF No. 34, at 7–8; Def.'s Reply, ECF No. 35, at 3.) Second, Defendant contends that its design is "markedly dissimilar" from the Non-GMO Project's seal, and that no reasonable consumer would confuse the two. (Def.'s Mem., ECF No. 34, at 8–13; Def.'s Reply, ECF No. 35, at 3–4.) And third, Defendant avers that no reasonable consumer would understand the phrase "Non GMO Ingredients" to mean that a product "does not contain ingredients derived from animals who were fed GMO feed." (Def.'s Mem., ECF No. 34, at 13; *see also id.* at 14–15.) Plaintiff, on the other hand, submits that Defendant's non-GMO graphic is likely to deceive consumers into thinking that an independent third party, and one with ingredient standards on par with the Non-GMO Project, has verified Defendant's products. (*See* Pl.'s Mem., ECF No. 33, at 1–4, 8–21.)

For the reasons contained herein, the Court respectfully recommends that Defendant's motion be denied with respect to Plaintiff's GBL and corresponding non-New York state law claims, and granted as to Plaintiff's claims for breach of express warranty, unjust enrichment, and any claims for injunctive relief. In addition, the Court respectfully recommends deferring ruling on the question of personal jurisdiction over the putative class members until the class certification stage.

## A. Sufficiency of Plaintiff's New York General Business Law Claims

Plaintiff's first two causes of action arise under GBL §§ 349 and 350. (Compl., ECF No. 1, ¶¶ 58–80.) As discussed, to state a claim under these sections, "Plaintiff must show first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Dwyer v. Allbirds, Inc.*, No. 21-CV-5238 (CS), 2022 WL 1136799, at *4 (S.D.N.Y. Apr. 18, 2022) (quotation marks omitted); *see also Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014); *Gordon*, 2022 WL 836773, at *9; *Oswego*

9

*Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24–25 (1995) (detailing the elements of a claim under § 349).

Defendant does not dispute that Plaintiff has adequately alleged consumer-oriented conduct or an injury resulting from such conduct. (*See generally* Def.'s Mem., ECF No. 34; Def.'s Reply, ECF No. 35.) To demonstrate that allegedly deceptive acts were "consumer-oriented," a plaintiff must show that they "had 'a broader impact on consumers at large[.]'" *Crawford*, 758 F.3d at 490 (quoting *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25). Plaintiff alleges that Defendant's emblem was "used prominently to market food" which consumers could readily purchase. (*See* Compl., ECF No. 1, ¶¶ 17, 20, 23, 62.) Plaintiff's allegations are thus sufficient to satisfy this first element. *See Dwyer*, 2022 WL 1136799, at *5; *Gordon*, 2022 WL 836773, at *9.

Likewise, to establish an injury resulting from a deceptive act, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Barton*, 535 F. Supp. 3d at 244. "One way to do so is to allege that the plaintiff would not have purchased the product or been willing to pay as much had they known the true facts." *Id.* (quotation marks omitted); *see also Brown v. Kerry Inc.*, No. 20-CV-9730 (PGG) (JLC), 2021 WL 5446007, at *3 (S.D.N.Y. Nov. 22, 2021), *report and recommendation adopted*, No. 20-CV-9730 (PGG) (JLC), 2022 WL 669880 (S.D.N.Y. Mar. 7, 2022). Here, Plaintiff alleges that she "purchased more of, or paid more for, the Products than Plaintiff would have had Plaintiff known the truth about the Products," and that "[t]he Products Plaintiff received were worth less than the Products for which Plaintiff paid." (Compl., ECF No. 1, ¶¶ 30–31; *see also id.* ¶ 64.) Therefore, Plaintiff has also met the third prong of establishing a GBL claim.

The core dispute in this case is whether Plaintiff has alleged sufficient factual matter to show that Defendant "engag[ed] in an act or practice that [wa]s deceptive or

misleading in a material way . . . ." *Oswego Laborers' Loc. 214 Pension Fund*, 85 N.Y.2d at 25. "To establish that conduct is materially misleading, a plaintiff must demonstrate that a reasonable consumer would likely be misled by the alleged misrepresentation." *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at *8 (E.D.N.Y. Sept. 26, 2016). As discussed above, courts employ "an objective definition of 'misleading,' under which the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Orlander*, 802 F.3d at 300 (quotation marks omitted). In addition, each allegedly misleading statement is viewed "in light of its context on the product label or advertisement as a whole," and courts must survey "[t]he entire mosaic . . . rather than each tile separately." *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 53 (E.D.N.Y. 2015); *see also Troncoso*, 2020 WL 3051020, at *6.

Plaintiff's central allegation is that Defendant's "Non-GMO Ingredients" graphic "appears to be that of an independent third party, when it in fact is not[.]" (Compl., ECF No. 1, ¶ 4; *see also id.* ¶ 5, 10–12, 16–17.) As a result, Plaintiff claims that Defendant reaps the benefit of consumers' confusion in thinking that the products meet the standards of third-party verifiers such as the Non-GMO Project — which prohibit ingredients that contain dairy from animals fed GMO feed — while including dairy from cows fed GMO grains. (*Id.* ¶¶ 18–20.) To be clear, Plaintiff does not allege that Defendant's use of "Non GMO Ingredients" text on its products is false.[6] (*See* Pl.'s Mem., ECF No. 33, at 9–10; *see*

---

[6] This is why Defendant's citation to *Stewart v. Kodiak Cakes, LLC*, for example, is unpersuasive. (*See* Def.'s Reply, ECF No. 35, at 6 (citing No. 19-CV-2454 (MMA) (MSB), 2021 WL 4950297, at *5 (S.D. Cal. Oct. 25, 2021)).) In *Stewart*, the plaintiffs alleged that the mere words "non-GMO" would lead a reasonable consumer to believe that no dairy ingredients were derived from cows that ate GMO feed, regardless of any implication of third-party verification. *See* Am. Compl., *Stewart v. Kodiak Cakes, LLC*, No. 19-CV-2454 (MMA) (MSB) (S.D. Cal. May 17, 2021), ECF No. 90, ¶¶ 121–24. In this case, Plaintiff's allegations of deceptiveness are premised on the claim that Defendant misleadingly indicated that its "products have been validated by independent parties as being free of GMOs." (Compl., ECF No. 1, ¶ 17.)

*also* Def.'s Mem., ECF No. 34, at 12 (arguing that reasonable consumers "understand that companies affix their own truthful text to their products").) *Cf. Newton*, 2018 WL 11235517, at *9 ("Current federal law 'prohibit[s] a food derived from an animal to be considered a bioengineered food solely because the animal consumed feed produced from, containing, or consisting of a bioengineered substance.'" (quoting 7 U.S.C. § 1639b(b)(2)(A))). Rather, Plaintiff alleges that Defendant Old Lyme's products contain dairy from cows fed GMO grains when its emblem implies otherwise. (Pl.'s Mem., ECF No. 33, at 6, 19; *see also* Compl., ECF No. 1, ¶¶ 18, 28.) Furthermore, Plaintiff claims that "even if the Complaint was limited to just confusion between [Defendant's] Seal and the Non GMO Project Seal (which again, it is not so limited), the two Seals are close enough to cause confusion." (Pl.'s Mem., ECF No. 33, at 3; *see also id.* at 12.)

Defendant urges the Court to decide as a matter of law that no reasonable consumer could find its design to be deceivingly similar to that of the Non-GMO Project or any other unnamed third-party entity. (*See* Def.'s Mem., ECF No. 34, at 8–10.)[7] Defendant also argues that it is "implausible that a reasonable consumer acting reasonably would understand the phrase Non GMO Ingredients to mean that the Product does not contain ingredients derived from animals who were fed GMO feed." (*Id.* at 13; *see also id.* at 3 (challenging Plaintiff's "untenable and implausible portrait of a reasonable consumer — one who is both highly sensitive to the presence of GMOs in food while simultaneously blind to basic visual distinctions on product labels and

---

[7] Defendant points out that Plaintiff does not cite to an example of any independent third-party verifier other than the Non-GMO Project. (*See* Def.'s Mem., ECF No. 34, at 8 n.4; *see also* Def.'s Reply, ECF No. 35, at 3 n.2.) Whether another independent third-party verifier exists apart from the Non-GMO Project is a question of fact beyond the scope of the present motion. Further, because the Court finds that Defendant's emblem is sufficiently evocative of the Non-GMO Project's, and therefore potentially misleading to a reasonable consumer, the Court need not reach this issue.

unable to identify the Non-GMO Project Verified Seal").) Additionally, Defendant contends that any ambiguity as to its emblem would be resolved upon a reasonable consumer seeing its product on a grocery shelf side by side with a Non-GMO Project verified product, and simply distinguishing the relevant seals:



(Def.'s Mem., ECF No. 34, at 10–12; *see also* Compl., ECF No. 1, ¶ 17.)

Notwithstanding Defendant's assumptions about how its products might be organized in grocery stores, reasonable consumers are generally not "expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Mantikas*, 910 F.3d at 637. It follows that reasonable consumers would not be expected to look beyond misleading representations on the front of a product to discover the truth from a *different* product placed beside it on a shelf. (*See* Pl.'s Mem., ECF No. 33, at 16–18.) Moreover, the Court finds that Plaintiff has sufficiently alleged that a reasonable consumer could be deceived by the similarities between Defendant's graphic and the Non-GMO Project's seal:

 

(Compl., ECF No. 1, ¶¶ 4, 16; Def.'s Mem., ECF No. 34, at 2.)

The Court recognizes, as have others, that "[t]he Non-GMO Project's seal is highly distinctive, including the name of the organization, the word 'VERIFIED,' and the URL to the Non-GMO Project's website alongside a graphic of an orange butterfly on a blade of grass." *Gordon*, 2022 WL 836773, at *12.[8] However, unlike in *Gordon*, where "[t]he only similarity between the Non-GMO Project's seal and the Product's non-GMO graphic [wa]s the use of the term 'non-GMO,'" *id.*, the Court finds that Defendant's green, V-shaped graphic atop the capitalized sans serif "NON GMO" text could plausibly give reasonable consumers the impression that Defendant's product was certified by an outside party such as the Non-GMO Project. Additionally, a finder of fact could conclude that the recognizability of the Non-GMO Project's seal — which Defendant argues undermines the possibility of consumer confusion — could actually be a source of such confusion, and one of the reasons why Defendant might be motivated to mimic its appearance by including a green V-shape and similar font. (*See* Def.'s Mem., ECF No. 34, at 18–19; Pl.'s Mem., ECF No. 33, at 18.)

A similar conclusion was reached by the district court in *Latiff v. Nestle USA, Inc.*, when confronted with comparable allegations regarding a non-GMO image:

---

[8] Defendant submitted the Honorable Kenneth M. Karas's opinion in *Gordon* as a notice of supplemental authority. (Def.'s Suppl. Authority, ECF No. 36; *see also* Pl.'s Resp. to Def.'s Suppl. Authority, ECF No. 38.)




Compl., *Latiff v. Nestle USA, Inc.*, No. 18-CV-6503 (ODW) (JPR) (C.D. Cal. July 27, 2018), ECF No. 1, ¶ 10. In that case, the court found that the defendant's emblem "could deceive a reasonable consumer" into thinking that the "No GMO Ingredients" graphic represented that the product was verified by a third party such as the Non-GMO Project, and therefore denied the defendant's motion to dismiss. *See Latiff v. Nestle USA, Inc.*, No. 18-CV-6503 (ODW) (JPR), 2019 WL 4544544, at *3–4 (C.D. Cal. Sept. 19, 2019). Here, the Court finds that Defendant's emblem, although somewhat less similar to the Non-GMO Project seal than the graphic at issue in *Latiff*, raises questions that are not properly decided at the motion to dismiss stage. *See Gavilanes*, 2021 WL 5052896, at *5 n.5 ("Whether the logos are confusingly similar, however, is a fact question for a jury."); *see also, e.g.*, *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-927 (RMW), 2010 WL 94265, at *2 (N.D. Cal. Jan. 6, 2010) (finding, at the motion to dismiss stage, that it was "plausible that a reasonable consumer would interpret [defendant's] Greenlist label as being from a third party" when its packaging included an image and text styled as a seal); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-CV-2200 (HSG), 2016 WL 6563348, at *2 (N.D. Cal. Nov. 4, 2016) (finding that plaintiffs sufficiently alleged that a reasonable consumer would be confused regarding Chipotle's non-GMO claims).

The second aspect of Defendant's argument is that, even if reasonable consumers acting reasonably would be misled by its label's imagery, Plaintiff has not plausibly alleged that they would then infer "that the Product does not contain ingredients derived from animals . . . fed GMO feed." (Def.'s Mem., ECF No. 34, at 13; *see also id.*

("[E]ven taking th[e] conclusory allegation [that the cows producing dairy for Defendant's product were fed GMO feed] as true, the Complaint fails to allege any facts to support the notion that a reasonable consumer would make this ideological and definitional leap."); *id.* at 16 ("Plaintiff pleads no other facts, and cites to no statutory, regulatory, or other authority, to support the notion that a reasonable consumer would interpret the term Non GMO Ingredients in this implausibly expansive manner."); Def.'s Reply, ECF No. 35, at 5–7.) Here too, the Court finds that this is a question of fact not properly decided on a motion to dismiss.[9]

Plaintiff alleges that "many consumers try to buy products that are not derived from GMOs," in part, due to the possible negative impact of GMOs on the environment. (Compl., ECF No. 1, ¶ 7.) Thus, the Non-GMO Project "verifies that products are not derived from GMO crops and verifies that milk and meat are not derived from animals that were fed GMO crops." (*Id.* ¶ 14.) Plaintiff claims, however, that "ingredients that constitute many of [Defendant's] Products are derived from GMOs," including "dairy . . . from cows fed GMO grains." (*Id.* ¶ 18.) Whether a reasonable consumer would appreciate this distinction — which ultimately, they may not — is "a question of fact that should not be resolved on a motion to dismiss." *Grossman*, 516 F. Supp. 3d at 278; *see also Barton*, 535 F. Supp. 3d at 237 (observing that "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"). Indeed, federal judges often have "a background and experience unlike that of most consumers," which makes it hard to "'to declare' that reasonable

_____

[9] Defendant also takes issue with Plaintiff's reliance on certain Federal Trade Commission ("FTC") guidelines, arguing that they are "irrelevant" and apply only to environmental claims. (Def.'s Mem., ECF No. 34, at 12; Def.'s Reply, ECF No. 35, at 7–8; *see also* (Compl., ECF No. 1, ¶ 9 (citing 16 C.F.R. §§ 260.1, 260.6(a)); Pl.'s Mem., ECF No. 33, at 2, 10–11).) However, the Court need not decide at this juncture the applicability of these guidelines, and does not incorporate them into its analysis.

consumers would not be misled." *Id.* (quoting *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 (MKB), 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015)).

In addition, the Court notes that a label's false implication can be sufficient to withstand initial scrutiny on a motion to dismiss. *See Mantikas*, 910 F.3d at 637 (finding "accurate" disclosures on the front of a product to be misleading where they "falsely impl[ied]" that the nature of a product's ingredients were "entirely or at least predominantly whole grain" when, in actuality, the "grain component consisting of enriched white flour substantially exceed[ed] the whole grain portion"). Which is all to say, Plaintiff's factual allegations could give rise to an inference that a reasonable consumer, acting reasonably, would think Defendant's emblem means that its products do not contain dairy from cows fed GMO grains. To conclude otherwise at this phase runs the dual risks of the Court substituting itself for the trier of fact, and potentially "validat[ing] highly deceptive marketing." *Id.* at 638.

Accordingly, "the Court cannot conclude as a matter of law that a significant portion of the general consuming public would not read the snack chips' labeling and reasonably believe that the products" are verified by a third-party entity, such as the Non-GMO Project or another organization with similar standards, and are made without dairy from cows fed GMO grains. *Troncoso*, 2020 WL 3051020, at *10; *see also Mogull*, 2022 WL 602971, at *3; *Barton*, 535 F. Supp. 3d at 244; *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 566 (S.D.N.Y. 2016). Therefore, the Court respectfully recommends that Defendant's motion be denied as to Plaintiff's GBL claims.[10]

---

[10] For similar reasons, and because Plaintiff has not yet moved for class certification, the Court recommends denying Defendant's motion as to Plaintiff's third cause of action alleging deceptive business practice violations under various other states' consumer protection laws. (*See* Compl., ECF No. 1, ¶¶ 81–89.)

17

**B. Plaintiff's Claims for Breach of Express Warranty, Unjust Enrichment, and Injunctive Relief**

In addition to Plaintiff's GBL claims, Defendant Old Lyme seeks to dismiss Plaintiff's breach of warranty and unjust enrichment claims for failure to state a claim under Rule 12(b)(6), and to dismiss Plaintiff's request for injunctive relief for lack of standing pursuant to Rule 12(b)(1). (*See* Def.'s Mem., ECF No. 34, at 16–24.) In response to Defendant's motion, and "in order to streamline this matter," Plaintiff states that she "dismisses without prejudice" her claims for breach of express warranty, unjust enrichment, and for any injunctive relief. (Pl.'s Mem., ECF No. 33, at 21; *see also id.* at 4.) Defendant urges the Court to deem these claims abandoned and to dismiss them "*with prejudice.*" (Def.'s Reply, ECF No. 35, at 10 (emphasis in original).)

Although Plaintiff has not unequivocally abandoned these claims, Defendant is correct that Plaintiff has "fail[ed] to respond in support." (*Id.*; *see also* Pl.'s Mem., ECF No. 33, at 21 (stating merely that "Plaintiff disagrees with Defendant's arguments").) Courts have "'considerable discretion in deciding whether to allow a withdrawal of a claim without prejudice.'" *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, No. 16-CV-5393 (KMW), 2018 WL 1115517, at *2 (S.D.N.Y. Feb. 26, 2018) (quoting *Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 114 (2d Cir. 1985)). However, "[a] district court 'may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.'" *Jennings v. Hunt Companies, Inc.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Felix v. City of New York*, 344 F. Supp. 3d 644, 654–55 (S.D.N.Y. 2018)); *see also Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 161–62 (E.D.N.Y. 2018) (collecting cases); *Verdi v. City of New York*, 306 F. Supp. 3d 532, 552 (S.D.N.Y. 2018) (finding plaintiff's claims abandoned and dismissing

18

them with prejudice where "[p]laintiff did not respond to [defendants] arguments in his opposition").

In this case, because Plaintiff has offered no substantive opposition to Defendant's arguments or offered any legal authority in support of dismissing her claims without prejudice, the Court recommends deeming these claims abandoned and dismissing them with prejudice. *See Jennings*, 367 F. Supp. 3d at 69–70; *Verdi*, 306 F. Supp. 3d at 552; *Laface*, 349 F. Supp. 3d at 162; *cf. Palacios v. City of New York*, No. 15-CV-386 (PAE), 2017 WL 4011349, at *6 n.11 (S.D.N.Y. Sept. 11, 2017).

**C.  Personal Jurisdiction Over Non-New York Class Members**

Defendant also asks that the Court dismiss Plaintiff's putative class claims on behalf of consumers injured outside of New York for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). (Def.'s Mem., ECF No. 34, at 24–28 (citing, *inter alia*, *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017)); *see also* Compl., ECF No. 1, ¶¶ 45–57.) As Defendant acknowledges, "[f]ederal district courts have taken conflicting approaches with respect to applying *Bristol-Myers* to class claims at the motion to dismiss stage." (Def.'s Mem., ECF No. 34, at 26 n.8.) *See also Gonzalez v. Costco Wholesale Corp.*, No. 16-CV-2590 (NGG) (JO), 2018 WL 4783962, at *7–8 (E.D.N.Y. Sept. 29, 2018). This is because in *Bristol-Myers*, the Supreme Court's "decision concern[ed] the due process limits on the exercise of specific jurisdiction by a State," and left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1783–84; *see also Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 274–75 (S.D.N.Y. 2019).

Given that Plaintiff has not yet brought a motion to certify a nationwide class, and in light of the questions surrounding *Bristol-Myers'* applicability to federal class

actions, the Court respectfully recommends "defer[ring] resolution of this issue until Plaintiff files a motion for class certification, if she does in fact decide to do so." *Gonzalez*, 2018 WL 4783962, at *8; *see also Bassaw v. United Indus. Corp.*, 482 F. Supp. 3d 80, 86 (S.D.N.Y. 2020); *Lugones*, 440 F. Supp. 3d at 236; *Jackson-Mau v. Walgreen Co.*, No. 18-CV-4868 (FB) (VMS), 2019 WL 5653757, at *3 (E.D.N.Y. Oct. 31, 2019); *Suarez v. California Nat. Living, Inc.*, No. 17-CV-9847 (VB), 2019 WL 1046662, at *5–6 (S.D.N.Y. Mar. 5, 2019).

### D. Leave to Amend and Status of Defendant Arca

In the final sentence of the response brief, Plaintiff requests leave to amend her pleading should the Court grant "any part" of Defendant's motion. (Pl.'s Mem., ECF No. 33, at 28.) In addition, as noted above *supra* note 2, Plaintiff has not fully responded to the Court's directive regarding Defendant Arca. On or before June 27, 2022, Plaintiff is respectfully directed to file a status letter indicating (1) whether she intends to seek leave to file an amended complaint in this case and the nature of any proposed amendments; and (2) the status of Defendant Arca.

### CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Defendant's motion to dismiss (ECF No. 32) be granted in part and denied in part. Specifically, the undersigned recommends (1) denying Defendant's motion as to Plaintiff's GBL and corresponding non-New York law deceptive business practice and advertising claims; (2) granting Defendant's motion as to Plaintiff's claims for breach of express warranty, unjust enrichment, and any claims for injunctive relief, and dismissing such claims with prejudice; and (3) deferring ruling on whether there is personal jurisdiction over the putative class members until the class certification stage. In addition, Plaintiff is respectfully directed to file a status letter with the Court by June 27, 2022, indicating

whether she anticipates seeking leave to amend the complaint, and updating the Court as to Defendant Arca.

*   *   *   *   *

Any objections to this report and recommendation must be filed within fourteen days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

**SO ORDERED.**

Dated:  Brooklyn, New York
         June 9, 2022

_Taryn A. Merkl_
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE