<b>Execution Copy</b>

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEWEL RANKINS and DARREN WONG, individually and on behalf of all others similarly situated, <br><br>                           **Plaintiffs,** <br><br>     v. <br><br> ARCA CONTINENTAL S.A.B. DE C.V., (d/b/a/ ARCA CONTINENTAL), and and OLD LYME GOURMET COMPANY (d/b/a DEEP RIVER SNACKS), <br><br>                     **Defendants.** | Case No.: 20-cv-1756-ENV-TAM |

**SETTLEMENT AGREEMENT**

Subject to the approval of the Court and pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Class Action Settlement Agreement and Release, including the attached Exhibits, is entered into between Plaintiffs Jewel Rankins and Darren Wong on behalf of themselves and those similarly situated, and Defendant Old Lyme Gourmet Company (d/b/a/ Deep River Snacks)[1].

## I.   RECITALS

1.1    WHEREAS, on April 9, 2020, Plaintiff **Rankins**[2] filed a putative **Class Action** complaint in the United States  District Court for the Eastern District of New York, *Rankin v. Arca Continental S.A.B. de C.V.. et al*, Case No. 1:20-cv-1176 (E.D.N.Y.) , against **Defendant** alleging: (1) violation of the New York General Business Law §§ 349 and 350; (2) violation of multiple states' consumer protection statutes; (3) breach of multiple states' express warranty laws; and (4) unjust enrichment. All claims relate to certain of **Defendant**'s Deep River brand chips, which were labeled with a "Non GMO Ingredients" statement, which **Plaintiffs** contend gave consumers the

---

[1] Following inception of this lawsuit, Old Lyme Gourmet Company (d/b/a Deep River Snacks) was merged with and into Wise Foods Inc.  Additionally, Arca Continental S.A.B. de C.V. a Mexican corporation,was not served in this matter (*see, e.g.,* ECF Nos. 19, 41) and therefore, although it is named in the caption, it is not a defendant in this litigation.

[2] All bolded and capitalized terms are defined in Section II, *infra.*

impression that the **Product**s were certified by a third-party, such as the Non-GMO Project, as being free from genetically modified ingredients. **Plaintiffs** further contend that the **Product**s contained GMO ingredients. **Defendant** denies these allegations.

1.2    WHEREAS, on June 23, 2020, **Defendant** timely filed a Letter Motion for Pretrial Conference in advance of filing a Motion to Dismiss. (ECF No. 8.).

1.3    WHEREAS, on August 24, 2020, the **Court** stayed all discovery on damages and class certification. Over the next year, the parties engaged in limited discovery.

1.4    WHEREAS, on October 12, 2020, Plaintiff **Wong** filed a putative **Class Action** complaint in the United States District Court for the Northern District of California, captioned *Wong v. Old Lyme Gourmet Company*, Case No. 3:20-cv-7095 (N.D. Cal.), against **Defendant** alleging violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200; and (2) the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* based on the **Product Labeling** on the **Product**s.

1.5    WHEREAS, on February 4, 2021, **Defendant** moved to dismiss, transfer, or stay the complaint in the ***Wong* Action**. (*See* ***Wong* Action**, ECF No. 19.)

1.6    WHEREAS, on March 22, 2021, following full briefing on **Defendant**'s Motion to Dismiss, Transfer, or Stay, the *Wong* court stayed the ***Wong* Action**. (***Wong* Action**, ECF No. 28.)

1.7    WHEREAS, on August 13, 2021 **Defendant** filed a second Letter Motion for Pretrial Conference at Judge Merkl's recommendation while the previously filed Letter Motion remained pending. (ECF No. 27.) On December 7, 2021, after receiving approval from the **Court, Defendant** moved to dismiss the ***Rankins* Action**. (ECF No. 32.)

1.8    WHEREAS, on June 9, 2022, the Magistrate Judge in the ***Rankins* Action** issued a Report and Recommendation granting in part and denying in part **Defendant**'s Motion to Dismiss. Specifically, the Report recommended denying the motion as to the General Business Law claims, but granting the motion as to the express warranty and unjust enrichment claims.

1.9    WHEREAS, on July 14, 2022, **Defendant** objected to the Report and Recommendation.

1.10    WHEREAS, on August 15, 2023, the **Court** overruled the objections to the Report and Recommendation.

1.11    WHEREAS, on October 3, 2023, the **Court** ordered that discovery proceed in full. The **Parties** have engaged in extensive interrogatory and document discovery directed at both liability and class certification in the ***Rankins* Action**.

1.12    WHEREAS, the **Parties** strongly disagree on the merits and viability of the claims set forth in the ***Rankins* Action** and ***Wong* Action**.

1.13    WHEREAS, **Plaintiffs** have not filed motions for class certification in any **Action**.

1.14    WHEREAS, **Defendant** denies all of the **Allegations** made in the **Actions** and all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged against it by **Plaintiffs** either on an individual basis, or on behalf of the putative classes. **Defendant** also denies that the claims asserted in the **Actions** meet the requirements for certification as a **Class Action**, other than for purposes of settlement. **Defendant** further denies that the evidence supports a finding of liability or monetary or equitable relief to **Plaintiffs**, any additional putative **Class Representative**, or any **Settlement Class Member**, with respect to any of the **Released Claims** or other **Allegations** made by **Plaintiffs**.

1.15    WHEREAS, **Plaintiffs** believe all claims are viable and subject to class certification.

1.16    WHEREAS, the **Parties** have engaged in extensive arm's length, good-faith negotiations in an effort to reach a resolution of the **Actions**. Such negotiations culminated in an all-day, in-person mediation with mediator Jill Sperber on March 28, 2024, with a second and final session on April 18, 2024.

1.17    WHEREAS, at the second mediation session, mediator Sperber made a mediator's recommendation, which was accepted by both sides.

1.18    WHEREAS, the **Parties**, and their respective counsel, taking into account the risks, uncertainties, delay, and expense involved in pursuing the **Actions**, as well as other relevant

considerations, have concluded that it is in the best interests of **Plaintiffs** and **Defendant** to compromise fully and finally settle all claims relating to the **Product**s.

1.19    WHEREAS, **Plaintiffs' Counsel** are experienced in litigating **Class Action** matters that assert claims like the claims asserted by **Plaintiffs** in the **Actions**.

1.20    WHEREAS, **Class Counsel** has analyzed and evaluated the merits of all **Parties'** contentions and this settlement as it affects all **Parties** and the **Settlement Class Members.** Among the risks and uncertainties of the **Actions** is the possibility that **Plaintiffs** will be unable to prove liability or damages (individually or on a class wide basis) at trial. **Plaintiffs** and **Class Counsel**, after taking into account the foregoing, along with the risks, uncertainties and costs of further prosecution of the **Actions**, are satisfied that the terms and conditions of this **Agreement** are fair, reasonable, adequate, and equitable, and that a settlement and the prompt provision of meaningful benefits to the **Settlement Class Members** are in the best interests of the **Settlement Class Members**.

1.21    WHEREAS, **Defendant**, while continuing to deny all **Allegations**, and disclaiming any liability with respect to any and all claims asserted in the **Actions**, has concluded that it is in Defendant's best interest to resolve the **Actions** on the terms stated in this **Agreement**, in order to avoid further expense, inconvenience, and interference with ongoing business operations, and to dispose of burdensome litigation.

1.22    WHEREAS, the undersigned **Parties** agree, subject to approval by the **Court**, that the **Released Claims** asserted by **Plaintiffs** shall be fully and finally compromised, settled and released on the terms and conditions set forth in this **Agreement**. The **Parties** intend that the **Court** conditionally certify a **Class Action** for settlement and that this **Agreement** will encompass and end all pending, threatened, or possible litigation or claims of **Plaintiffs** against **Defendant** based on the subject matter of the **Actions**.

1.23    WHEREAS, for purposes of settlement only, Plaintiff **Rankins** will seek leave of **Court** to amend her complaint in the *Rankins* **Action** to add Plaintiff **Wong** as a **Class Representative**.

1.24    WHEREAS, **Plaintiffs** and **Defendant** specifically agree that **Defendant**'s execution of this **Agreement**, and consent to the filing of the **Amended Complaint**, is not, and shall not be construed as, an admission by **Defendant**, or deemed to be evidence: (1) of the validity of any of the claims made by **Plaintiffs** or of any liability to **Plaintiffs**, as alleged in the **Actions** or **Amended Complaint**; (2) that **Defendant** violated any state or federal law in any respect; or (3) that class certification of the claims asserted in the **Actions** is appropriate under Fed. R. Civ. P. 23 or any analogous state law. Nothing in this **Agreement** shall constitute an admission of liability or be used as evidence of liability, by or against any **Party** hereto.

1.25    WHEREAS, **Defendant** agrees to submit to personal jurisdiction and venue of the **Court** solely for purposes of this **Settlement**. If the **Agreement** fails to receive **Court** approval or the **Effective Date** does not occur, then **Defendant** retains the right to challenge personal jurisdiction and venue of the **Court** over these claims.

NOW, THEREFORE, without (a) any admission or concession on the part of **Plaintiffs** about the likelihood of success at trial, on appeal, or in other motions practice, or (b) any admission or concession of the merit of the claims asserted in the **Actions** or of liability or wrongdoing or the lack of merit of any defense whatsoever by **Defendant**, it is hereby stipulated and agreed by the undersigned, on behalf of **Plaintiffs**, the **Settlement Class Members**, and **Defendant**, that these **Actions** and all **Released Claims** of the **Settlement Class Members** be settled, compromised, and finally adjudged, subject to **Court** approval as required by Federal Rule of Civil Procedure 23, on the terms and conditions set forth herein.

The recitals stated above are true and accurate and are hereby made a part of this **Agreement**.

## II.    DEFINITIONS

Capitalized terms in this **Agreement** shall be defined as follows:

2.1    "**Actions**" means, collectively, the lawsuits captioned *Rankin, et al. v. Arca Continental S.A.B. de C.V. and Old Lyme Gourmet Co. (d/b/a Deep River Snacks)*, Case No. 1:20-cv-1756-ENV-TAM (E.D.N.Y.) and *Wong, et al. v. Old Lyme Gourmet Co. (d/b/a Deep River Snacks)*, Case No. 3:20-CV-07095-WHO (N.D. Cal.).

2.2    "**Agreement**" means this Settlement Agreement, including all exhibits hereto.

2.3    "**Allegations**" means the allegations as asserted in the *Rankins* **Complaint**, the *Wong* **Complaint**, and the **Amended Complaint**.

2.4    "**Amended Complaint**" means the Amended Complaint for Settlement (attached hereto as Exhibit F), which will be filed with the **Court** pursuant to Section 1.23, and will add Plaintiff **Wong** as a plaintiff in this Action.

2.5    "**Attorneys' Fees and Costs**" means such funds as may be awarded by the **Court** to **Plaintiffs' Counsel** for their work, efforts, and expenditures in connection with the respective **Actions** and settlement, including fees, costs, and expenses of experts, consultants, or other individuals retained by, or who assisted **Plaintiffs' Counsel** in connection with the respective **Actions** and settlement, as described more particularly in Section V of this Agreement.

2.6    "**Claim Administrator**" means, subject to **Court** approval, Epiq Class Action & Claims Solutions, Inc., unless another third-party administrator is later agreed to by the **Parties** in writing and approved by the **Court**.

2.7    "**Claim Filing Deadline**" means ninety (90) days after the initial date set for the **Final Approval** hearing.

2.8    "**Claim Form(s)**" means a form in substantially the same form as Exhibit B hereto to be used by a **Settlement Class Member** to make a **Settlement Claim** under the **Settlement.**

2.9    "**Claimant**" means a **Settlement Class Member** who submits a **Settlement Claim** for payment as described in Section III of this **Agreement**.

2.10    "**Class Action**" is to be given the meaning in Federal Rule of Civil Procedure 23(a) and 23(b)(3).

2.11    "**Class Notice**" means the notice to the Class to be disseminated by the **Claim Administrator** as forth in the **Notice Plan** described in the declaration of the Claims Administrator filed with the Motion for Preliminary Approval and as anticipated to be approved in accordance with the **Court**'s **Preliminary Approval**.

2.12    "**Class Period**" means the period of time from February 2, 2017 through the date of the **Preliminary Approval** Order.

2.13    "**Class Representatives**" means **Plaintiffs** Jewel Rankins and Darren Wong, collectively.

2.14    "**Court**" means the United States District Court, Eastern District of New York.

2.15    "**Defendant**" means Old Lyme Gourmet Co. (d/b/a Deep River Snacks), which previously merged with and into Wise Foods, Inc..

2.16    "**Defendant's Counsel**" means Eversheds Sutherland (US) LLP including, but not limited to, Meghana Shah and Melissa Fox.

2.17    "**Effective Date**" means the date on which the **Final Approval** is final and no longer subject to any further appeal as of right, or by discretionary review.

2.18    "**Escrow Account**" means the separate, interest-bearing escrow account to be established by the **Claim Administrator** at a bank to hold funds received in connection with the administration of this **Settlement**.

2.19    "**Final Approval**" means the order and judgment entered by the **Court** approving this **Agreement** and, certifying a class for settlement purposes.

2.20    "**Household**" means any number of natural persons who currently or during the **Class Period** occupied the same dwelling unit.

2.21    "**Long Form Notice**" means notice to **Settlement Class Members** in substantially the same form as Exhibit C.

2.22    "**Motion for Preliminary Approval**" means the motion filed by Plaintiffs seeking preliminary approval of the **Settlement**.

2.23    "**Notice Date**" means the day on which the **Claim Administrator** initiates the **Online Notice**.

2.24    "**Notice Plan**" means the **Parties** and **Claim Administrator**'s plan to provide the **Settlement Class Members** with notice of Settlement.

2.25    "**Online Notice**" means notice to **Settlement Class Members** in substantially the same form as Exhibit D.

2.26    "**Opt-Out and Objection Deadline**" means thirty-five (35) days prior to the initially scheduled hearing date on **Final Approval**.

2.27    "**Parties**" means **Plaintiffs** and **Defendant**, collectively.

2.28    "**Parties' Counsel**" means collectively **Plaintiffs' Counsel, Class Counsel**, and **Defendant's Counsel.**

2.29    "**Party**" means any one of **Plaintiffs** or **Defendant**.

2.30    "**Person(s)**" means any natural person.

2.31    "**Plaintiffs**," means **Rankins** and **Wong**.

2.32    "**Plaintiffs' Counsel**" or "**Class Counsel**" means collectively Reese LLP and Sheehan & Associates, P.C.

2.33    "**Preliminary Approval**" means issuance of an order, granting preliminary approval to this Agreement as within the range of possible **Final Approval**, approving **Class Notice** to the **Settlement Class Members** as described in Section IV below, and setting a hearing to consider **Final Approval** of the settlement and any objections thereto.

2.34    "**Product Labeling**" means the statement "Non GMO Ingredients" as depicted here or similarly pictured:

   

2.35    "**Product(s)**" means potato chips sold under the Deep River brand name that had the **Product Labeling**.  A complete list of the **Product**s is attached hereto in Exhibit A.

2.36    "**Protective Order**" means the October 6, 2020 order of the **Court** (ECF No. 18) so ordering entry of the proposed Confidentiality Order (ECF No. 17-1) that governs the treatment of confidential information produced in discovery.

2.37    "**Rankins**" means plaintiff Jewel Rankins.

2.38    "***Rankins* Action**" means *Rankin, et al. v. Arca Continental S.A.B. de C.V. and Old Lyme Gourmet Co. (d/b/a Deep River Snacks)*, Case No. 1:20-cv-1756-ENV-TAM (E.D.N.Y.)

2.39    "*Rankins* **Complaint**" means the Complaint filed as ECF No. 1 in the *Rankins* **Action.**

2.40    "**Released Claims**" means any and all claims, demands, rights, suits, liabilities, and causes of action of every nature and description whatsoever, known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that any Plaintiff or **Settlement Class Member** has or may have against the **Released Parties** arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in, or that could have been alleged in the **Actions**, including but not limited to those claims asserted in the **Actions,** the *Rankins* **Complaint**, the *Wong* **Complaint,** and/or the **Amended Complaint**, and in connection with the conduct of the **Actions**, that have been brought, could have been brought, or are currently pending in any forum in the United States. For sake of clarity, **Released Claims** do not cover claims, if any, for bodily injury arising out of a **Settlement Class Member's** use of the **Product**s.

2.41    "**Released Parties**" means **Defendant**, and each and all of its respective present or former, direct or indirect parent companies, subsidiaries, shareholders, owners, affiliates, predecessors, successors and assigns, and each and all of their respective present or former members, officers, directors, managers, employees, employers, attorneys, accountants, financial advisors, commercial bank landers, insurers, investment bankers, representatives, general and limited partners and partnerships, suppliers, co-manufacturers, distributors, any trust of which **Defendant** is a settlor, trustee, or beneficiary, heirs, executors, administrators, successors, affiliates, and assigns of each of them.

2.42    "**Releasing Parties**" means **Plaintiffs** and all **Settlement Class Members** who have not validly and timely opted out of the **Settlement**, and all of their respective spouses,

children, executors, representatives, guardians, wards, heirs, estates, successors, bankruptcy estates, bankruptcy trustees, predecessors, agents, and assigns, and all those who claim through them or who assert or could assert claims on their behalf.

2.43    "**Service Award**" means any award sought by application to and approval by the **Court** that is payable to the **Class Representatives** to compensate them for their efforts in bringing their respective **Actions** and achieving the benefits of this settlement on behalf of the **Settlement Class Members**.

2.44    "**Settlement**" means the settlement embodied in this **Agreement.**

2.45    "**Settlement Benefit(s)**" means the benefits provided to **Settlement Class Members** as set forth in Section III of this Agreement.

2.46    "**Settlement Claim**" means a claim for **Settlement Benefit**s submitted under Section III of this Agreement.

2.47    "**Settlement Class Member(s)**" means all persons in the United States who purchased any of the **Product**s during the **Class Period** for personal or household use.  Excluded from this definition are (a) the **Released Parties**; (b) all distributors, wholesalers, retailers, and licensors of the Products; (c) judges presiding over the **Actions** and any members of their immediate families and/or staff; (d) **Persons** who made a valid, timely request for exclusion; (e) the mediator Jill Sperber; and (f) any government entity.

2.48    "**Settlement Fund**" means the aggregate value of Four Million Dollars and No Cents ($4,000,000.00) that may be distributed to **Settlement Class Members** who submit valid and timely **Claim Form**s, pursuant to Section III.  The **Settlement Fund** will first be used to pay for **Class Notice** and administration costs or other costs pursuant to the terms of Section III of this

Agreement, and all **Attorneys' Fees  and Costs** and **Service Award**s, prior to any distribution from the payments to **Settlement Class Members**.

2.49    "**Settlement Website**" means an internet website created and maintained by the **Claim Administrator**, the URL of which shall be specified in the **Notice Plan**.

2.50    "**Termination Date**" means the date that the **Agreement** is terminated as set forth in Section 9.3.

2.51    "**Valid Claim**" means a **Settlement Claim** submitted in compliance with Section III of this Agreement and determined to be valid by the **Claim Administrator**, and as further described in that Section.

2.52    "**Wong**" means plaintiff Darren Wong.

2.53    "***Wong* Action**" means the matter of *Wong, et al. v. Old Lyme Gourmet Co. (d/b/a Deep River Snacks)*, Case No. 3:20-CV-07095-WHO (N.D. Cal.).

2.54    "***Wong* Complaint**" means the Complaint filed as ECF No. 1 in the ***Wong* Action.**

**Execution Copy**

**III.    SETTLEMENT BENEFITS AND CLAIMS ADMINISTRATION**

**Monetary Compensation**

3.1    Subject to the rights and limitations set forth in this Agreement, every **Settlement Class Member** shall have the right to submit a **Settlement Claim** for **Settlement Benefits.**  A **Settlement Claim** shall be a **Valid Claim** only if submitted on the **Claim Form** pursuant to, and in compliance with, the procedures set forth in this Section III.  Submission of a **Settlement Claim**, regardless of whether it is determined to be a **Valid Claim**, shall confer no rights or obligations on any **Party**, any **Settlement Class Member**, or any other **Person**, except as expressly provided herein.

3.2    At the election of the **Settlement Class Member**, **Claim Form**s may be submitted in paper via regular U.S. mail or online at the **Settlement Website**.  **Claim Form**s must be postmarked or submitted online no later than the **Claim Filing Deadline**.  **Claim Form**s received or submitted online after that date will not be **Valid Claim**s.  For **Claim Form**s that are submitted online, the **Settlement Class Member** shall have the opportunity to upload Proof of Purchase image files (e.g., .jpg, .tiff, .pdf); to preview and confirm information entered in the **Claim Form** prior to submitting the **Settlement Claim**; and to print a page immediately after the **Claim Form** has been submitted showing the information entered, the names of image files uploaded, and the date and time the **Claim Form** was received.

3.3    On the **Claim Form**, the **Settlement Class Member**, or a **Person** with authority to sign and bind the **Settlement Class Member**, must provide and certify the truth and accuracy of the following information under the penalty of perjury by signing the **Claim Form** physically, or by e-signature, to be considered a **Valid Claim**:

(a)    The **Settlement Class Member**'s name and mailing address;

(b)    The **Settlement Class Member**'s email address (unless the **Settlement Class Member** submits a **Claim Form** by mail, in which case an email address is optional, or the **Settlement Class Member** attests that he or she does not have an e-mail address);

13

(c)     That the **Settlement Class Member** made the purchase or purchases directly at a retail establishment or online;

(d)     That the claimed purchases were not made for purposes of resale, commercial use or for any purpose other than household use; and

(e)     For each claimed purchase that is not supported by Proof of Purchase, the number of **Product(s)** purchased.

3.4     Subject to the total dollar value cap in **Settlement Benefits** as provided in Section 3.6, each **Settlement Class Member** who submits at least one (1) **Valid Claim** per **Household**, as determined by the **Claim Administrator**, shall receive a **Settlement Benefit** as follows:

(a)     A **Settlement Class Member** who submits a **Valid Claim**, with a Proof of Purchase, shall receive $5.00 for the first **Product** claimed and $0.50 for each additional **Product** claimed that is submitted with a Proof of Purchase.  There is no limitation to the amount of **Product**s a **Claimant** may seek compensation for based upon Proof of Purchase

(b)     A **Settlement Class Member** who submits a **Valid Claim**, without a Proof of Purchase, shall receive $5.00 for the first **Product** claimed and $0.50 for each additional **Product** claimed up to a maximum of ten (10) additional **Products claimed,** for a total of $10.00.

(c)     Claims with Proof of Purchase and without Proof of Purchase shall be cumulative. For example, a **Settlement Class Member** may make a **Valid Claim** for 6 **Product**s with Proof of Purchase (for $7.50), and 3 **Product**s without Proof of Purchase (for $6.00) for a total of $13.50.

(d)     The total payment due to the **Settlement Class Member** shall be provided electronically or in a single check payable to the **Settlement Class Member**, as elected by the **Settlement Class Member**.

3.5     Each **Household** is limited to and may only submit a single **Claim Form**.

3.6     The total dollar value of **Valid Claim**s submitted will be capped at the amount of money remaining in the **Settlement Fund** after the costs of notice and claims administration, **Service Award**s, and **Attorneys' Fees and Costs** have been subtracted.

14

3.7    **Settlement Fund**.

(a)    **Defendant** shall establish a **Settlement Fund** with a cash value of Four Million Dollars and No Cents ($4,000,000.00).

(b)    Within ten (10) business days after the entry of the **Preliminary Approval** Order, **Defendant** shall transfer to the **Escrow Account** established by the Settlement **Claim Administrator** and approved by the **Parties** Five Hundred Thousand Dollars and No Cents ($500,000.00). **Defendant** shall transfer to the **Escrow Account** the remaining balance of Three Million Five Hundred Thousand Dollars and No Cents ($3,500,000.00) within forty-five (45) calendar days after entry of the **Preliniary Approval** Order.

(c)    The **Settlement Fund** at all times will be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-1. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the **Settlement Fund** or otherwise, including any taxes or tax detriments that may be imposed upon **Defendant** with respect to income earned by the **Settlement Fund** for any period during which the **Settlement Fund** does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), will be paid out of the **Settlement Fund**. **Defendant** and its counsel, and **Plaintiffs** and **Class Counsel**, will have no liability or responsibility for any of the Taxes.  The Parties shall cause the **Settlement Fund** to indemnify and hold harmless **Defendant**, **Defendant's Counsel**, **Plaintiffs,** and **Class Counsel**, for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

(d)    In no circumstances shall **Defendant**'s total contribution to the **Settlement Fund** exceed Four Million Dollars and No Cents ($4,000,000.00) in the aggregate.  Under this **Agreement**, the **Parties** agree that **Defendant**'s contribution to the **Settlement Fund** will encompass the full extent of the **Released Parties**' monetary payment in full consideration for the Releases and covenants not to sue set forth in Section VII of this Agreement.  These payments, pursuant to the terms and conditions of this Agreement, and any other non-monetary obligations

of and considerations due from **Defendant** set forth in this Agreement, will be in full satisfaction of all **Released Claims**.

(e)     **Defendant** is not obligated (and will not be obligated) to compute, estimate, or pay any taxes on behalf of **Plaintiffs**, **Class Counsel**, any **Settlement Class Member**, or the **Claim Administrator**, or otherwise administer or support the implementation of the Settlement except as set forth herein.

(f)     In the event the **Effective Date** does not occur, or in the event that a **Termination Date** does occur, all amounts paid into the **Settlement Fund**, less amounts incurred for claims administration and notice up to the date it is determined that the **Effective Date** will not occur, shall be returned to **Defendant**.  In no other event shall the amounts paid into the **Settlement Fund** revert to **Defendant**.

3.8     Excess or Insufficient Funds in the **Settlement Fund**.

(a)     The **Claim Administrator** shall determine each authorized **Claimant**'s payment based upon each **Claimant**'s **Claim Form** and the total number of **Valid Claim**s in accordance with this Section.

(b)     Excess Funds. If, after calculating the payment amount for all **Valid Claim**s, value remains in the **Settlement Fund**, such remaining funds shall increase eligible **Settlement Class Members**' claimed relief on a *pro rata* basis.

(c)     Insufficient Funds. If the total amount of the **Valid Claims** awards exceeds the value of the **Settlement Fund**, such claims will be reduced on a *pro rata* basis.

(d)     *Cy Pres*. It is the **Parties**' intent to distribute the entirety of the **Settlement Fund** to **Settlement Class Members**. If, after distributing the funds from the **Settlement Fund** in accordance with the **Settlement**, including the payment of notice and administration costs, any cash remains in the **Settlement Fund** from uncashed checks, the remaining funds will be distributed to Hunger Free America as a *cy pres* award.  Under no circumstances, except as delineated in Section 3.7(f), *supra*, shall any funds remaining in the **Settlement Fund** revert or otherwise be returned to **Defendant.**

3.9     The **Claim Administrator** shall be solely responsible for, among other things, providing notice as set forth in the **Notice Plan**, processing **Claim Form**s, administering the **Settlement Website**, administering the exclusion process, administering the **Settlement Benefit** claims process described herein (including receiving and maintaining on behalf of the **Court** and the **Parties** any **Settlement Class Member** correspondence regarding requests for exclusion from the **Settlement**), and such other duties as may be reasonably necessary to administer the terms of this Agreement.  The **Claim Administrator** shall not approve duplicate or multiple claims for the same purchase but shall deem valid only one **Claimant** for each purchase. The **Claim Administrator** will use adequate and customary procedures and standards to prevent the payment of fraudulent claims and to pay only **Valid Claim**s. The **Claim Administrator** and **Parties** shall have the right to audit claims, and the **Claim Administrator** may request additional information from **Claimant**s.  If any fraud is detected or reasonably suspected, the **Claim Administrator** can require further information from the **Settlement Class Member** or deny **Settlement Claims**, subject to the supervision of the **Parties** and ultimate oversight by the **Court**.

3.10     The determination of validity of **Settlement Claims** shall occur within a reasonable time.  The **Claim Administrator** shall have discretion to reasonably approve or deny each claim. **Class Counsel** and **Defendant's Counsel** shall have the right to audit **Settlement Claim**s and to challenge the **Claim Administrator**'s decision by motion to the **Court**. **Class Counsel**'s or **Defendant's Counsel**'s choice not to audit the validity of any one or more **Claim Form**s shall not constitute or be construed as a waiver or relinquishment of any audit or other rights as to any other **Claim Form**s, individually or as a group, and similarly, shall not be construed as a waiver or relinquishment by such **Party** as to any of its audit and other rights under this Agreement.  No **Person** shall have any claim against **Plaintiffs**, **Defendant**, **Class Counsel**, **Defendant's Counsel**, or the **Claim Administrator** based on any determination of a **Valid Claim**, distributions or awards made in accordance with this Agreement and the exhibits hereto.  Neither **Plaintiffs**, nor **Defendant**, nor their respective counsel, shall have any liability whatsoever for any act or omission of the **Claim Administrator**.

3.11    Within twenty (20) days after the **Claim Filing Deadline**, the **Claim Administrator** shall notify by email all **Settlement Class Members** whose **Settlement Claim**s are denied of the reason(s) for the denial, using the email address (if any) or physical address provided by the **Settlement Class Member** on the **Claim Form**. If no email address or physical address is provided by the **Settlement Class Member** on the **Claim Form**, the Administrator shall not have an obligation to provide the **Settlement Class Member** any notification of the denial of the **Settlement Claim** or the reasons for denial.

3.12    **Valid Claim**s shall be paid electronically or by check to the **Settlement Class Member** and mailed to the address provided on the **Claim Form**, as updated in the National Change of Address Database, no more than one hundred and eighty (180) days after the **Effective Date**.

3.13    All settlement payments shall be subject to a ninety (90) days void period, after which the payments shall no longer be negotiable. Notice of the void period shall be printed on the check, if sent by mail, or on any accompanying or confirmatory correspondence, if funds are sent electronically. If a settlement payment is not negotiated, the **Settlement Class Member** shall not be entitled to any further payment under this **Agreement**. If the check is returned as undeliverable, the **Claim Administrator** shall send an email to the **Claimant**, if one was provided with the **Settlement Claim**, to attempt to obtain a better address, and if obtained, shall mail the check to the new address, but shall have no other obligation to skip-trace or obtain an updated address. The return or failure to cash checks shall have no effect on a **Settlement Class Member**'s release of claims, obligations, representations, or warranties as provided herein, which shall remain in full effect.

3.14    No deductions for taxes will be taken from any **Settlement Benefit** at the time of distribution. **Settlement Class Members** are responsible for paying all taxes due on such **Settlement Benefit**s. All **Settlement Benefit** payments shall be deemed to be paid solely in the year in which such payments are actually issued. The **Parties' Counsel** and/or the **Parties** do not purport to provide legal advice on tax matters to each other or **Settlement Class Members**. To

the extent this Agreement, or any of its exhibits or related materials, is interpreted to contain or constitute advice regarding any U.S. Federal or any state tax issue, such advice is not intended or written to be used, and cannot be used, by any **Person** for the purpose of avoiding penalties under the Internal Revenue Code or any state's tax laws.

3.15    All fees and expenses incurred by the **Claim Administrator** in administering **Settlement Claim**s and performing the other tasks set forth in Section III shall be paid from the **Settlement Fund**. Any interest that accrues on funds held in the **Escrow Account** shall be used to pay settlement administration expenses. The **Claim Administrator** has represented to the **Parties** that its fees for administering this Settlement are estimated to be approximately $432,592.  The **Claims Administrator** has agreed that such sum shall not be exceeded, so long as the volume assumptions in the estimate are not exceeded.

**<u>Non-Monetary Benefit</u>**

3.16    **Defendant** agrees to refrain from using the **Product Labeling** on the packaging of its **Product**s. Nothing in the **Parties**' agreement shall obligate **Defendant** to address third-party historical depictions of the Non-GMO Ingredients text on **Defendant**'s packaging including on third-party websites or elsewhere where not controlled by **Defendant**.

**IV.    NOTICE**

4.1    The **Claim Administrator** will facilitate the notice process by assisting the **Parties**, including by providing notice of this settlement to the appropriate federal and state officials in the United States, as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA Notice").  The **Claim Administrator** shall serve notice of the **Agreement** that meets the requirements of 28 U.S.C. § 1715, on the appropriate federal and state officials no later than ten (10) business days after Plaintiff files the Motion for **Preliminary Approval**.  The **Claim Administrator** will file a certification with the **Court** stating the date or dates on which the CAFA Notice was sent. **Defendant** will provide **Class Counsel** with any substantive responses received in response to any CAFA Notice.

4.2     Prior to the **Notice Date**, the **Claim Administrator** shall establish the **Settlement Website**, which shall contain the **Long Form Notice** in a downloadable PDF format; answers to frequently asked questions; a Contact Information page that includes the address for the **Claim Administrator** and addresses and telephone numbers for **Class Counsel** and **Defendant's Counsel**; the **Agreement**; the signed order of **Preliminary Approval**; a downloadable and online version of the **Claim Form**; a downloadable and online version of the form by which **Settlement Class Members** may exclude themselves from the **Settlement**; and (when they become available) the motion for **Final Approval** and **Plaintiffs**' application(s) for **Attorneys' Fees and Costs** and **Service Award**, and any Order on **Final Approval**.

4.3     The **Claim Administrator** will terminate the **Settlement Website** two-hundred and forty (240) days after either (1) the **Effective Date**, or (2) the **Termination Date**.

4.4     Notice to the **Settlement Class Members** shall be provided on websites and/or social media platforms chosen by the **Claim Administrator** and approved by the **Parties' Counsel** and accessible to desktop and mobile users, so that overall notice of the Settlement is reasonably calculated to apprise the **Settlement Class Members** of the **Settlement**.  Such notice shall begin no later than thirty (30) days after **Preliminary Approval**.  No later than fifteen (15) days prior to the hearing on **Final Approval**, the **Claim Administrator** shall submit a declaration to the **Court** under penalty of perjury explaining how the media were chosen and attesting to the number of impressions delivered. The **Claim Administrator** shall retain a record of all notice-related materials and procedures.

4.5     The **Claim Administrator** shall establish and maintain a toll-free telephone helpline, available 24 hours per day, where callers may obtain information about the Settlement.

4.6     The **Parties' Counsel** shall supervise the **Claim Administrator** in the performance of the notice functions set forth in this Section IV.

4.7     At least fifteen (15) days prior to the **Final Approval** hearing referenced in Section VI of this Agreement, the **Claim Administrator** shall certify to the **Court** that it has complied with the notice requirements set forth herein.

## V.    ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE PAYMENT

5.1    <u>Attorneys' Fees, Costs, and Expenses</u>.  No later than thirty-five (35) days prior to the **Opt-Out and Objection Deadline**, **Class Counsel** shall apply to the **Court** for an award of its attorneys' fees in a total amount not to exceed one-third (1/3) of the **Settlement Fund** or $1,333,333.33.  **Class Counsel** shall also separately apply for the reimbursement of costs and expenses. **Class Counsel** submits to the jurisdiction of this **Court** for the enforcement of this provision of the **Agreement** and for enforcement of all other provisions of this **Agreement.**

5.2    <u>Class Representative Payment</u>.  No later than thirty-five (35) days prior to the **Opt-Out and Objection Deadline**, **Plaintiffs** shall apply to the **Court** for a **Service Award** in an amount not to exceed $5,000 each (for a total of $10,000), subject to approval by the **Court**, as compensation for (a) the work they performed to represent **Settlement Class Members**, and (b) the general release set forth in Section 7.1.

5.3    **Defendant** agrees not to oppose **Class Counsel**'s application for **Attorneys' Fees and Costs** or **Plaintiffs**' application for **Service Award**s, made in accordance with the provisions of Sections 5.1 and 5.2.

5.4    Any payment of a **Service Award** as set forth in Section 5.2 shall be, in addition to any amount claimed by **Plaintiffs** subject to Section III above, the total obligation of **Defendant** to pay money to **Plaintiffs**, in connection with the **Actions** and this **Settlement**.

5.5    All **Attorneys' Fees and Costs**, as well as the **Services Awards**, shall be paid by the **Claim Administrator** from the **Settlement Fund**.

5.6    To be clear, **Class Counsel**'s fees shall be based only on the **Settlement Fund** amount, and shall in no way be based on nor tied to any non-monetary relief or business practice changes.

5.7    The **Attorneys' Fees and Costs** awarded to **Class Counsel** shall be paid by the **Claim Administrator** from the **Settlement Fund** to **Class Counsel** within five (5) business days after the **Effective Date**.

5.8    Within five (5) business days after the **Effective Date**, any **Court**-approved **Service Award** shall be wired by the **Claim Administrator** from the **Settlement Fund** to **Class Counsel** to be paid to **Plaintiffs**.

## VI.    CLASS SETTLEMENT PROCEDURES

6.1    <u>Class Certification</u>.    The **Parties** agree that, for settlement purposes only, the *Rankins* **Action** shall be certified as a **Class Action** pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) with **Plaintiffs** as the **Class Representatives** and **Plaintiffs' Counsel** as **Class Counsel**.

6.2    In the event the **Agreement** is terminated for any reason, the certification of the **Class Action** shall be vacated, and the **Actions** shall proceed as if the **Class Action** had not been certified, and the **Parties** will be restored to their respective places in the **Actions** as of the date of this **Agreement**. **Defendant**'s conditional consent herein to certification of the **Class Action** shall not be used against **Defendant** by any **Party** or non-party for any purpose in the **Actions** or any other litigation, lawsuit, or proceeding of any kind whatsoever.

6.3    <u>Settlement Approval</u>.    Contemporaneously with the filing of this **Agreement**, **Plaintiffs** shall move for an order granting **Preliminary Approval** to this Agreement as within the range of possible **Final Approval**; approving **Class Notice** to the **Settlement Class Members** as described in Section IV above; and setting a hearing to consider **Final Approval** of the **Settlement** and any objections thereto.    **Defendant** shall have no obligation to make separate filings in support of the motion but may do so at its election after the motion has been filed. **Defendant's Counsel** shall appear at the hearing on behalf of **Defendant** to confirm their agreement with the terms of the settlement as provided herein.    The **Parties** agree to the form and substance of the Proposed Order of **Preliminary Approval**, attached hereto as Exhibit F.

6.4    <u>Amended Complaint for Settlement</u>. Solely for purposes of implementing this Agreement and effectuating the proposed Settlement, the **Parties** agree and stipulate that:

(a)    **Plaintiffs** shall seek leave of **Court** to file the **Amended Complaint** without material changes to the version attached hereto as Exhibit E, and **Defendant** shall consent

to such amendment pursuant to Fed. R. Civ. P. 15(a)(2). The motion for leave to file the **Amended Complaint** shall be filed concurrently with the motion for **Preliminary Approval** of the Settlement so that the **Amended Complaint** may become operative upon the **Court**'s **Preliminary Approval** of the **Settlement**.

(b)    If for any reason **Final Approval** of the **Settlement** does not occur, the **Amended Complaint** shall be stricken from the record and the operative complaint in the *Rankins Action* shall be the *Rankins* **Complaint**.

6.5    <u>Final Approval Order and Judgment</u>.  No later than thirty-five (35) days prior to the **Opt-Out and Objection Deadline**, **Class Counsel** shall file their motion for payment of **Attorneys' Fees and Costs** and payment of **Service Award**s to the **Class Representatives**.  No later than twenty-eight (28) days prior to the hearing on **Final Approval**, or otherwise in accordance with the **Court**'s schedule for the **Final Approval** Hearing, **Plaintiffs** shall file their Motion for **Final Approval** of the **Settlement**. **Plaintiffs** shall move for the entry of an order of **Final Approval**, granting **Final Approval** of this **Settlement** and holding this **Agreement** to be final, fair, reasonable, adequate, and binding on all **Settlement Class Members** who have not excluded themselves as provided below, and ordering that the settlement relief be provided as set forth in this **Agreement**, ordering the releases as set forth in Section VII, below, and entering judgment in this case.  **Defendant** shall have no obligation to make separate filings in support of the motion.  **Defendant's Counsel** shall appear at the hearing to confirm **Defendant**'s agreement with the terms of the Settlement as provided herein.

6.6    <u>Exclusions and Objections</u>.  The Notice shall advise prospective **Settlement Class Members** of their rights to forego the benefits of this **Settlement** and pursue an individual claim; to object to this **Settlement** individually or through counsel; and, if they object, to appear at the **Final Approval** hearing.

6.7    If any **Settlement Class Member** wishes to object to the settlement, the **Settlement Class Member** must submit a written objection to the **Claim Administrator**. Objections must be delivered to the **Claims Administrator** either via U.S. Post Office or other

mail service and be postmarked by the **Opt-Out and Objection Deadline** or they shall not be valid. The **Parties** may respond to any objection to the **Settlement** with appropriate arguments and evidence. The objection must contain the following information:

- The objector's full name, current address, telephone number, and email address;

- A clear and detailed written statement of the specific legal and factual bases for each and every objection, accompanied by any legal support for the objection;

- The identity of any lawyer representing the objector, if any;

- A statement indicating whether the objector intends to appear at the Final Approval Hearing either in person or through the objector's lawyer, and, if through a lawyer, the identity of the lawyer;

- A list of all persons, if any, who will be called to testify at the Final Approval Hearing in support of the objection and any documents to be presented or considered;

-The signature of the objector and the signature of any duly authorized lawyer or other duly authorized representative (if any); and

- A detailed list of any other objections submitted by the objector as an objector to any class action settlement submitted in any court, whether state, federal, or otherwise, in the United States in the previous five years. If the objector has not made any such prior objection, the objector must affirmatively state this in the written materials provided with the objection.

6.8    If any **Settlement Class Member** wishes to be excluded from (in other words, opt out of) this Settlement, the **Settlement Class Member** may do so by completing the exclusion form at the **Settlement Website**; downloading and submitting to the **Claim Administrator** a completed exclusion form; or submitting a valid request to exclude, as described in the **Long Form Notice**, to the **Claim Administrator**. Requests to exclude must be delivered to the **Claims Administrator** (in case of electronic submission) or postmarked (in case of a paper submission via the U.S. Post Office or other mail service) by the **Opt-Out and Objection Deadline** or they shall not be valid. A **Settlement Class Member** who elects to exclude themselves from this

**Settlement** shall not be permitted to object to this **Settlement** or to intervene. Any **Settlement Class Member** who does not submit a timely request for exclusion shall be bound by all subsequent proceedings, orders, and the **Final Approval** in the *Rankins* **Action** relating to this **Settlement** and **Agreement**, even if he or she has pending, or subsequently initiates, litigation, arbitration, or any other proceeding against **Defendant** relating to the **Released Claims**. Mass opt-outs are not allowed.

6.9     The proposed **Preliminary Approval** order and **Long Form Notice** will provide that any **Settlement Class Member** wishing to object or exclude themselves who fails to properly or timely file or serve any of the requested information and/or documents will be precluded from doing so.

6.10    Immediately upon receipt of any objection, the **Claim Administrator** shall forward the objection and all supporting documentation to counsel for the **Parties**. At least twenty-eight (28) days prior to the hearing on **Final Approval**, **Class Counsel** shall file all such objections and supporting documentation with the **Court** along with any response to the objection made by the **Parties**.

6.11    At least fifteen (15) days prior to the hearing on **Final Approval**, the **Claim Administrator** shall prepare a list of the names of the **Person**s who, pursuant to the **Long Form Notice**, have excluded themselves from the **Class Action Settlement** in a valid and timely manner, and **Class Counsel** shall file that list with the **Court**.

6.12    A **Settlement Class Member** who objects to the **Settlement** may also submit a **Claim Form** on or before the **Claim Filing Deadline**, which shall be processed in the same way as all other **Claim Form**s. A **Settlement Class Member** shall not be entitled to an extension to the **Claim Filing Deadline** because the **Settlement Class Member** also submitted an objection.

6.13    If a **Settlement Class Member** submits both an objection and an exclusion request, the exclusion shall take precedence and be considered valid and binding, and the objection shall be deemed to have been sent by mistake and rejected.

6.14    Effect if Settlement Not Approved or Agreement is Terminated.  This **Agreement** was entered into only for purposes of settlement.  In the event that **Preliminary Approval** or **Final Approval** of this **Settlement** and this **Agreement** does not occur for any reason (other than a modification of the attorney's fees or costs that **Class Counsel** will seek under Section 5.1 or service awards for the **Class Representatives** sought under Section 5.2), or if **Final Approval** is reversed on appeal (other than a modification of the attorney's fees or costs awarded to **Class Counsel** or the service awards to the **Class Representatives**), then no term or condition of this **Agreement,** or any draft thereof, or discussion, negotiation, documentation, or other part or aspect of the **Parties**' settlement discussions shall have any effect, nor shall any such matter be admissible in evidence for any purpose in the **Actions**, or in any other proceeding, and the **Parties** will be restored to their respective places in the **Actions** as of the May 1, 2024 order from the **Court** in the *Rankins* **Action** staying the *Rankins* **Action**.

**VII.    RELEASES**

7.1    Upon the **Effective Date** and by operation of the judgment, the **Releasing Parties** shall have fully, finally, and forever released, relinquished, and discharged against the **Released Parties** all **Released Claims** (including, without limitation, any unknown claims), as well as any claims arising out of, relating to, or in connection with, the defense, settlement or resolution of the **Actions** or the **Released Claims**.

7.2    No Admission of Liability.  This **Agreement** reflects, among other things, the compromise and settlement of disputed claims among the **Parties** hereto, and neither this **Agreement** nor the releases given herein, nor any consideration therefor, nor any actions taken to carry out this **Agreement** are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, or defense, or of any point of fact or law (including but not limited to matters respecting class certification) on the part of any **Party**. **Defendant** expressly denies the **Allegations** of the **Actions,** including the **Amended Complaint**. Neither this **Agreement,** nor the fact of **Settlement**, nor the settlement proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by

the **Released Parties**, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by the **Released Parties**. The **Released Parties** may file the **Agreement** and/or the **Final Approval** order in any action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.3    This **Agreement** and all negotiations, correspondence and communications leading up to its execution will be deemed to be within the protection of Federal Rule of Evidence 408 and any analogous state or federal rules or principles.

## VIII.    DISMISSALS

8.1    **Plaintiff's Counsel** shall file a Notice of Voluntary Dismissal without Prejudice in the *Wong* **Action** following the filing of the **Amended Complaint**. The Parties agree that the statute of limitations for the claims in the *Wong* Action are tolled pending either a **Termination Date** or the **Effective Date**.

## IX.    ADDITIONAL PROVISIONS

9.1    Best Efforts. Subject to the limitations expressed herein, the **Parties' Counsel** shall use their best efforts to cause the **Court** to give **Preliminary Approval** to this Agreement and settlement as promptly as practicable, to take all steps contemplated by this **Agreement** to effectuate the **Settlement** on the stated terms and conditions, to cooperate in addressing any objections, and to obtain **Final Approval** of this **Agreement**. The **Parties** and **Parties' Counsel** shall not encourage anyone directly or indirectly to opt out or object. If the **Court** requires changes to the **Agreement** as a prerequisite to **Preliminary Approval** or **Final Approval**, the **Parties** shall negotiate in good faith regarding such changes.

9.2    Changes of Time Periods. The time periods and/or dates described in this Agreement with respect to the giving of notices and hearings are subject to approval and change by the **Court** or by the written agreement of **Class Counsel** and **Defendant's Counsel**, without

notice to **Settlement Class Members** except that the **Claim Administrator** shall ensure that such dates are posted on the **Settlement Website**.

9.3     Termination Rights.  Either **Party** may unilaterally terminate this **Agreement**, declare it null and void, and have no further obligations under this **Agreement**, if any of the following conditions subsequent occurs:

a. The **Parties** fail to obtain and maintain **Preliminary Approval** of the proposed settlement;

b. The **Court** refuses to certify the **Class Action**;

c. The **Court** fails to enter **Final Approval** consistent with the provisions in Section 6.5; or

d. If any appeal is taken, the **Agreement** is not upheld on appeal.

9.4     Time for Compliance. All time periods set forth herein shall be computed in calendar days unless otherwise specified.  If the date for performance of any act required by or under this Agreement falls on a Saturday, Sunday or **Court** holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.

9.5     Governing Law.  This Agreement is intended to and shall be governed by the laws of the State of New York, without regard to conflicts of law principles that would require the application of the laws of another jurisdiction.

9.6     Entire Agreement.  The terms and conditions set forth in this **Agreement** constitute the complete and exclusive statement of the agreement between the **Parties** hereto relating to the subject matter of this **Agreement**, superseding all previous negotiations and understandings, and may not be contradicted by evidence of any prior or contemporaneous agreement.  The **Parties** further intend that this **Agreement** constitutes the complete and exclusive statement of its terms as between the **Parties** hereto, and that no extrinsic evidence whatsoever may be introduced in any agency or judicial proceeding, if any, involving this **Agreement**.  Any amendment or modification of the **Agreement** must be in writing and signed by each of the **Parties** and the **Parties' Counsel**.

9.7    <u>Advice of Counsel</u>.  The determination of the terms of, and the drafting of, this **Agreement** have been by mutual agreement after negotiation, with consideration by and participation of all **Parties** hereto and the **Parties' Counsel**.

9.8    <u>Binding Agreement</u>.  This **Agreement** shall be binding upon and inure to the benefit of the respective heirs, successors and assigns of the **Parties** hereto.

9.9    <u>No Waiver</u>.  The waiver by any **Party** of any provision or breach of this **Agreement** shall not be deemed a waiver of any other provision or breach of this **Agreement.**

9.10    <u>No Assignment</u>.  **Plaintiffs** and **Plaintiffs' Counsel** represent and warrant that none of **Plaintiffs**' claims asserted in the **Actions,** encompassed by the **Released Claims**, or otherwise referred to in this **Agreement** have been assigned, encumbered, or in any manner transferred in whole or in part.

9.11    <u>Execution in Counterparts</u>.  This **Agreement** shall become effective upon its execution by all of the undersigned.  The **Parties** may execute this Agreement in counterparts and/or by fax or electronic mail, and execution of counterparts shall have the same force and effect as if all **Parties** had signed the same instrument. The **Parties** and their counsel may execute this agreement by electronic signature.

9.12    <u>Captions</u>.  Captions and section numbers herein are inserted merely for the reader's convenience, and in no way define, limit, construe, or otherwise describe the scope or intent of the provisions of this **Agreement**.

9.13    <u>Extensions of Time</u>.  The **Parties** reserve the right, by agreement and subject to the **Court**'s approval, to grant any reasonable extension of time that might be needed to carry out any of the provisions of this **Agreement**.

9.14    <u>Enforcement of this Agreement</u>.  The **Court** shall retain jurisdiction to enforce, interpret, and implement this **Agreement**.  All **Parties** hereto submit to the jurisdiction of the **Court** for these purposes.

9.15    <u>Severability</u>.  In the event that any provision hereof becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable, or void, this **Agreement** shall continue in full force and effect without said provision.

9.16    <u>No Primary Drafter of Settlement Agreement</u>.  The determination of the terms of, and the drafting of, this **Agreement** has been by mutual understanding after negotiation, with consideration by and participation of, the **Parties** hereto and their counsel.

9.17    <u>Variance in Terms</u>.  In the event of any variance between the terms of this **Agreement** and any of the Exhibits hereto, the terms of this **Agreement** shall control and supersede the Exhibit(s).

9.18    <u>Authorization to Enter Settlement Agreement</u>.  The individual signing this **Agreement** on behalf of **Defendant** represents that he/she is fully authorized by **Defendant** to enter into, and to execute, this **Agreement** on behalf of **Defendant**.  **Plaintiffs' Counsel** represent that they are fully authorized to conduct settlement negotiations with **Defendant's Counsel** on behalf of **Plaintiffs**, and to enter into, and to execute, this **Agreement** on behalf of the **Settlement Class Members**, subject to **Court** approval pursuant to Federal Rule of Civil Procedure 23(e). **Plaintiffs** enter into and execute this **Agreement** on behalf of themselves, and as representatives of and on behalf of the **Settlement Class Members**, subject to **Court** approval pursuant to Federal Rule of Civil Procedure 23(e).

9.19    <u>Notices</u>.  All notices to the **Parties** or **Parties' Counsel** required by this **Agreement**, shall be made in writing and communicated by mail and fax or email to the following addresses:

If to **Plaintiffs**, **Plaintiffs' Counsel**, or **Class Counsel**:

Michael R. Reese
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10024
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*

If to **Defendant** or **Defendant's Counsel**:

Meghana Shah
**EVERSHEDS SUTHERLAND (US) LLP**
1114 Avenue of the Americas, 40th Floor
New York, New York 10036
Telephone: 212-389-5000
Email: *meghanashah@eversheds-sutherland.com*

9.20    <u>Protective Orders, Document Retention, and Public Communications</u>.  All orders and designations regarding the confidentiality of documents and information  remain in effect, and all **Parties** and **Parties' Counsel** remain bound to comply with the **Protective Order**, including the provision to certify the destruction of "Confidential" documents. All discovery and settlement materials produced to **Plaintiffs** or **Plaintiffs' Counsel** (including data, documents, and written discovery) will be returned to **Defendant's Counsel** or destroyed within 15 days of the **Effective Date**.  This material may not be used in any other actions. Further, **Plaintiffs** and **Plaintiffs' Counsel** agree not to use any discovery (including data) produced in these actions to solicit in any way potential new class representatives. Additionally, the **Parties** (including counsels' law firms) agree not to disparage each other, each other's business practices, products or services, or agents, partners, employees, affiliates, managers, officers, directors, members, attorneys, insurers, parents, subsidiaries, successors, principals, assigns, shareholders and/or representatives, now or at any time in the future, in public or in private for any acts or omissions of the Parties that occurred up to the **Effective Date** of **this Agreement**. The term "disparage" shall mean any statement which, directly or by reasonable implication, creates a negative impression about the reputation, character, practices, and/or conduct of another in the mind of any reasonable person to whom the statement

31

is made, and includes verbal, written and/or electronic statements. In addition, during the **Claims Period**, no party or counsel (including counsels' law firms) is allowed to communicate with the press/media/reporters/journalists, etc., or to publish anything about the **Actions** and their claims to third parties, including about any negotiated resolution of this matter, in verbal, written, or any other form, including, but not limited to, on a website, social media, or other forum other than to say "no comment" or make a statement agreed to by the Parties.

IN WITNESS HEREOF the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on the last date it is executed by all of the undersigned.

**Execution Copy**

**APPROVED AND AGREED:**

DATED: July 1, 2024

Jewel Rankins
*Plaintiff and Class Representative*

DATED: July 1, 2024

Darren Wong
*Plaintiff and Class Representative*

DATED: July 1, 2024

**REESE LLP**

Michael R. Reese
*Class Counsel and Plaintiffs' Counsel*

DATED: July 1, 2024

**SHEEHAN & ASSOCIATES, P.C.**

Spencer Sheehan
*Class Counsel and Plaintiffs' Counsel*

**(INTENTIONALLY LEFT BLANK)**

**Execution Copy**

**APPROVED AND AGREED (CONTINUED):**

DATED: 7/1/24

WISE FOODS, INC., a successor by merger to
**OLD LYME GOURMET COMPANY**

By: _____

Name: _____Milton Mattus_____

Its: _____CEO_____

DATED: 7/1/2024

**EVERSHEDS SUTHERLAND (US) LLP**

_____

Meghana Shah

*Defendant's Counsel*

34

**Execution Copy**

## <u>LIST OF EXHIBITS</u>

Exhibit A:    Products List

Exhibit B:    Claim Form

Exhibit C:    Long Form Notice

Exhibit D:    Online Notice

Exhibit E:    Amended Complaint for Settlement

Exhibit F:    Proposed Order of Preliminary Approval