UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X
JEWEL RANKINS and DARREN WONG,

              Plaintiffs,

      -against-

ARCA CONTINENTAL S.A.B. de C.V.
and OLD LYME GOURMET COMPANY,

             Defendants.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
20-CV-1756 (ENV) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      This is a putative class action brought against Old Lyme Gourmet Company ("Old Lyme"). (*See* Am. Compl., ECF No. 55-5, at 1.)[1] Plaintiffs Jewel Rankins[2] and Darren Wong purchased potato chips manufactured by Defendant Old Lyme Gourmet Company, doing business as Deep River Snacks, that included on the packaging a graphic that stated the chips did not contain GMO ingredients. (*Id.* ¶¶ 1, 23, 35.) Alleging that the graphic was misleading, Plaintiffs claim monetary damages and have filed suit on behalf of all similarly situated purchasers. (*Id.*) Plaintiffs allege that Defendant Old Lyme violated numerous states' consumer protection statutes as well as the common law of Connecticut, the state where Defendant Old Lyme maintains its headquarters. (*Id.* ¶¶ 16–21.)

_____

[1] In connection with the motion for class action settlement approval discussed herein, the parties have agreed to the filing of an amended complaint to serve as the operative pleading for purposes of settlement. For the reasons discussed herein, the Court recommends granting leave to file the amended complaint in connection with the proposed class action settlement.

[2] Plaintiff Rankins's name was originally missing an "s" in the case caption due to an error in the original complaint. (Tr. of Sept. 16, 2024 Fairness Hearing, ECF No. 59, at 5:21–22 (hereinafter "Fairness Hearing").)

Currently pending before the Court is Plaintiffs' motion for preliminary settlement approval. For the following reasons, the Court recommends granting Plaintiffs' motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. Factual Background

Plaintiff Jewel Rankins is a Brooklyn resident. (Am. Compl., ECF No. 55-5, ¶ 22.) Plaintiff Darren Wong is a San Francisco, California resident. (*Id.* ¶ 34.) Defendant Old Lyme ("Defendant") is a domestic corporation and a wholly-owned subsidiary of Arca, a publicly traded company headquartered in Mexico.[3] (*Id.* ¶¶ 46–48.) Rankins purchased Defendant's Aged Cheddar Horseradish flavored chips in Brooklyn in 2018, believing that they were "verified to be non-GMO by an independent third-party verifier." (*Id.* ¶¶ 23, 27.) Wong purchased Defendant's Aged Cheddar Horseradish and Sour Cream and Onion flavored chips in San Francisco in 2019 and 2020, believing that they were "verified to be non-GMO by an independent third-party verifier." (*Id.* ¶¶ 35, 39.) Rankins alleges that when given a choice, she "purposefully chooses non-GMO products . . . and relies on packaging representations to determine if products are certified as non-GMO by an independent, third-party verifier." (*Id.* ¶ 24.) Likewise, Wong alleges that he "relied on the Non GMO Ingredients Seal . . . and would not have purchased the Product had Plaintiff Wong known the Non GMO Ingredients

[3] On August 24, 2020, the Honorable Peggy Kuo directed Plaintiff Rankins" to serve Arca Continental S.A.B. de C.V. or file a letter explaining why it has not been served." (Aug. 24, 2020 ECF Min. Entry & Order.) On October 19, 2020, counsel for Rankins filed a status report representing that Defendant Arca had not yet been served, and that Rankins was considering amending her complaint to substitute a domestic entity of Arca called "Arca Continental Foods, LLC." (Oct. 19, 2020 Status Report, ECF No. 19.) Based on the Court's independent review of the docket, it appears that Arca has not been served, a point conceded in the Settlement Agreement. (Settlement Agreement, ECF No. 55, at 1 n.1.) Plaintiffs' proposed amended complaint removes Arca as a Defendant. (Am. Compl., ECF No. 55-5.)

representation was deceptive." (*Id.* ¶ 39.) Both Plaintiffs claim that if they had known the chips they bought were not verified by an independent third party, they would not have been willing to pay the same amount for the chips or would not have purchased them at all. (*Id.* ¶¶ 27, 29–30, 41.)

Plaintiffs also allege that "consumers have become significantly more aware of, and sensitive to, products that have been approved by independent third parties, and they buy those products based upon the seals of the independent third parties." (*Id.* ¶ 6.) According to Plaintiffs, "many consumers try to buy products that are not derived from GMOs," which in turn, has produced "an industry of independent, third-party validation companies" to meet such demand. (*Id.* ¶¶ 7–8.) One such third party is the Non-GMO Project, a nonprofit that runs a "verification program" to certify that "products are not derived from GMO crops" or "animals that were fed GMO crops." (*Id.* ¶¶ 13–14.) Products that meet the Non-GMO Project's standards receive permission to place a seal on the front of the approved product's packaging:





(*Id.* ¶¶ 15–17.)[4] In this case, Plaintiffs claim that Defendant "intentionally mimicked the appearance of an independent verifier's seal, such as the seal of the Non-GMO Project," when formulating its own emblem:



---

[4] For the sake of clarity, the Court takes judicial notice of, and includes here, the entirety of the Non-GMO Project seal, as depicted on the front of the product packaging included in Plaintiffs' complaint. (*See* Am. Compl., ECF No. 55-5, ¶¶ 16–17; Def.'s Mem., ECF No. 34, at 2; *id.* at 3 n.1.) *See also Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, at *5 (S.D.N.Y. Mar. 18, 2022). The Court notes that the image included in Plaintiffs' complaint omitted the word "verified" and the website address of the Non-GMO Project. (Am. Compl., ECF No. 55-5, ¶ 16.)



(*Id.* ¶¶ 5, 10–12, 17.)

Further, Plaintiffs allege that Defendant created its non-GMO graphic "to profit off consumer desire for independently validated products," when in fact, Defendant's products do not meet the Non-GMO Project's standards for receiving such approval and verification. (*Id.* ¶¶ 16, 18–19 (noting that Defendant's products "contain dairy from cows fed GMO grains," whereas the Non-GMO Project "does not allow for its seal of approval to be placed on dairy-based products that could be from animals fed GMO feed").) Plaintiffs claim that Defendant's deceptive practices led consumers to pay "a significant premium" for non-GMO products without receiving "the benefit of the bargain," i.e., "avoid[ing] the well-known health and environmental risks associated with GMO products." (*Id.* ¶ 20.)

## II.  Procedural History

Plaintiff Rankins initiated this putative class action on April 9, 2020. (*See generally* Compl., ECF No. 1.) Following the parties' engagement in limited discovery and

unsuccessful settlement negotiations, the Honorable Eric N. Vitaliano granted Defendant Old Lyme's motion for leave to file a motion to dismiss. (Aug. 23, 2021 ECF Order; *see also, e.g.*, July 27, 2021 Status Report, ECF No. 24 (summarizing procedural history).) Defendant Old Lyme filed its fully briefed motion to dismiss on December 7, 2021, which Judge Vitaliano thereafter referred to the undersigned Magistrate Judge for a report and recommendation. (*See* Mot., ECF No. 32; Mem. in Opp'n to Mot., ECF No. 33; Mem. in Supp. of Mot., ECF No. 34; Reply in Supp. of Mot., ECF No. 35; Dec. 8, 2021 ECF Order; *see also* Def.'s Suppl. Authority, ECF No. 36; Resp. to Def.'s Suppl. Authority, ECF No. 38.) On June 9, 2022, the Court issued a Report and Recommendation recommending that the motion to dismiss be granted as to Plaintiff Rankins's claims for breach of express warranty, unjust enrichment, and injunctive relief, and denied as to Plaintiff Rankins's various deceptive business practice and advertising claims. (R. & R., ECF No. 39.) Judge Vitaliano adopted the Report and Recommendation in full on August 15, 2023. (Mem. & Order, ECF No. 44.) Thereafter, Defendant answered the complaint and the parties began to engage in discovery. (Answer, ECF No. 48; Status Report, ECF No. 50.)

On March 12, 2024, the parties requested a stay of the discovery schedule for the purpose of engaging in formal mediation, which request was granted on March 13, 2024. (Joint Mot. to Stay, ECF No. 51; Mar. 13, 2024 ECF Order.) On April 30, 2024, the parties reported that they had reached an agreement in principle on a class action settlement. (Mot. to Stay, ECF No. 52.) On July 1, 2024, Plaintiffs filed a motion for preliminary settlement approval and for leave to file an amended complaint. (Mot., ECF No. 56.) The motion was referred to the undersigned Magistrate Judge on July 2, 2024; following the referral, the Court scheduled a fairness hearing to take place on September 16, 2024. (July 2, 2024 Order Referring Mot.; July 12, 2024 Scheduling Order.)

As set forth *supra* note 1, as part of the proposed settlement, Plaintiffs request leave to file an amended complaint. (Pls.' Mem. in Supp. of Mot. for Class Certification, ECF No. 56-1, at 23.) Defendants consent. (Tr. of Sept. 16, 2024 Fairness Hearing, ECF No. 59, 6:19–6:25.) (hereinafter "Fairness Hearing").) Here, the proposed amendments add another named Plaintiff (Darren Wong), remove Defendant Arca, expand the allegations to include more kinds of chips, and clarify the governing law to "allow for a unified claim across all [putative] class members."[5] (Fairness Hearing, ECF No. 59, at 6:16–17; *see generally* Am. Compl., ECF No. 55-5.)

The Court held a fairness hearing on September 16, 2024. (Sept. 16, 2024 ECF Min. Entry & Order; Fairness Hearing, ECF No. 59.) The Court heard argument regarding Plaintiffs' pending motion, including the likelihood of final settlement approval and class certification, as well as the parties' proposed notice procedures. (*See generally* Fairness Hearing, ECF No. 59.) The Court addressed Plaintiffs' request to file an amended complaint and confirmed that Defendants do not object. (*Id.* at 5:14–7:7.) The Court noted that the parties' proposed settlement was reached following mediation, and the parties provided an overview of that process, noting that the parties accepted the mediator's proposal. (*Id.* at 16:3–25; 17:13–19:17.) The parties discussed the benefits of settlement and estimated that settlement would help the parties avoid two to four years of litigation and associated costs. (*Id.* at 19:18–24:18.) The Court also requested that the parties correct various issues and typographical errors in the claim

---

[5] Federal Rule of Civil Procedure 15(a) provides, in relevant part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that leave should be freely given. For the reasons discussed herein that favor approval of the proposed class action settlement, the Court also respectfully recommends that Plaintiffs be granted leave to file the proposed amended complaint solely for "effectuating the proposed Settlement" as contemplated by the parties. (Settlement Agreement, ECF No. 55, ¶ 6.4.)

form and notice. (*Id.* at 46:9–63:9.) Specifically, on the claim form, the Court indicated that the parties should make clear that proposed class members may request an unlimited number of claim awards with a proof of purchase for each product, and that it seemed unfair for otherwise valid claims to be rejected if there was a counting error or if the claim was inadvertently submitted twice. (*Id.* at 46:9–50:4; 48:14–19.) As to the notice, the Court inquired about how it described the issue in the case (*i.e.*, Defendant's use of the words "Non-GMO Ingredients" in connection with a graphical design as opposed to a plain textual statement), and the parties agreed it would be clearer to refer to Defendant's use of a non-GMO graphic or label. (*Id.* at 50:16–52:4.) In addition, the Court noted that it was not clear from the Notice who qualified as "released parties," and that the Notice must notify putative class members that they may represent themselves *pro se* and provide more detail for putative class members as to the anticipated expenses related to claim administration. (*Id*. at 52:23–63:9.) The parties subsequently filed a revised claim form and notice reflecting these corrections. (Revised Claim Form, ECF No. 57–1; Revised Long Form Notice, ECF No. 57–3.)

## DISCUSSION

Plaintiffs request that the Court (1) preliminarily certify the settlement class for the purposes of settlement; (2) appoint Plaintiffs as the class representatives; (3) appoint counsel as class counsel; (4) preliminarily approve the settlement agreement; (5) approve the notice plan; (6) appoint Epiq Class Action & Claims Solutions, Inc. ("Epiq") as settlement administrator and direct it to commence the notice plan; and (7) schedule a fairness hearing to consider final approval of the settlement. (Mot., ECF No. 56.)

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class — or a class proposed to be certified for purposes of settlement — may

8

be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "At the preliminary approval stage, a court makes an initial evaluation of fairness prior to notifying the class . . . ." *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at \*3 (E.D.N.Y. Feb. 11, 2021).

Preliminary approval is guided by a "likelihood standard," i.e., "whether the parties have shown that the court will *likely* be able to grant final approval and certify the class." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019) (hereinafter "*Payment Card*"); *see also* Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii). "If the court determines that notice to class members is 'justified by the parties' showing'" as to the likelihood of final approval and class certification, "it 'must direct notice in a reasonable manner to all class members who [would] be bound by the proposal.'" *Rosenfeld*, 2021 WL 508339, at \*4 (quoting Fed. R. Civ. P. 23(e)(1)(B)). The court must also appoint class counsel for purposes of settlement. *Payment Card*, 330 F.R.D. at 58.

The Court begins with an analysis of the likelihood of final settlement approval and class certification, then assesses the proposed form and manner of notice, and concludes with appointment of class counsel.

## I. Likelihood of Final Settlement Approval

### A. Legal Standards

In assessing the likelihood of final approval, courts "look[] to the factors contained in the text of Rule 23(e)(2)." *Payment Card*, 330 F.R.D. at 28. Under Rule 23(e)(2), courts must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "[P]aragraphs (A) and (B) are 'procedural' factors that address 'the conduct of the litigation and of the negotiations leading up to the proposed settlement,' whereas . . . paragraphs (C) and (D) are 'substantive' factors that address the 'relief that the settlement is expected to provide to class members.'" *Rosenfeld*, 2021 WL 508339, at *3 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

The substantive factors are supplemented by the nine *Grinnell* factors, which "courts in this Circuit have traditionally considered" when "evaluating the fairness, reasonableness, and adequacy of the proposed settlement." *Id.* (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *Payment Card*, 330 F.R.D. at 29 (noting the "significant overlap" between the *Grinnell* and substantive factors). The *Grinnell* factors include:

(1) the expense, complexity, and likely duration of the litigation; (2) the class's reaction to the settlement; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing damages; (5) the risks of establishing liability; (6) the risks of maintaining the class throughout the litigation; (7) defendants' ability to withstand greater judgment; (8) the range of reasonableness of the settlement amount considering the best possible recovery; and (9) the range of reasonableness of the settlement amount given the risks of litigation.

*Rosenfeld*, 2021 WL 508339, at *3 (citing *Grinnell*, 495 F.2d at 463).

**B. Analysis**

1. *Procedural Factors*

a. <u>Adequate Representation</u>

"In determining the adequacy of class representatives and counsel, courts consider 'whether (1) plaintiff[s'] interests are antagonistic to the interests of other members of the class and (2) plaintiff[s'] attorneys are qualified, experienced[,] and able to conduct the litigation.'" *Rosenfeld*, 2021 WL 508339, a *4 (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)); *see Payment Card*, 330 F.R.D. at 30 n.25 (explaining that "Rule 23(a)(4) case law . . . guide[s]" the Rule 23(e)(2)(A) analysis). Class representatives "'must be part of the class and possess the same interest and suffer the same injury as the [other] class members.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *see also Payment Card*, 330 F.R.D. at 31 (explaining that the Due Process Clause requires adequate representation). As for class counsel, "[a] court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that . . . counsel have possessed the experience and ability, and have engaged in the discovery[] necessary to effective representation of the class's interests." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (quotation marks omitted); *see also* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("For example, the nature and amount of discovery in this or other cases . . . may indicate whether counsel negotiating on behalf of the class had an adequate information base.").

Here, the record illustrates that Plaintiffs' interests are aligned with those of the proposed class. Plaintiffs seek to represent "[a]ll persons in the United States who purchased any of Defendant's Products bearing the Non GMO Ingredients seal on the

label within the applicable limitations period." (Am. Compl., ECF No. 55-5, ¶ 56.) Plaintiffs claim financial harm resulting from Defendant's alleged violations of numerous states' consumer protection statutes as well as Connecticut common law — harm that the other proposed class members are also alleged to have suffered. (*Id.* ¶¶ 58, 69–84.) Absent any indication that Plaintiffs' interests in this action "are antagonistic to the interest[s] of other members of the class," the record demonstrates that Plaintiffs are well positioned to represent the proposed class. *Cordes*, 502 F.3d at 99.

The Court similarly finds that Plaintiffs are adequately represented by their attorneys (herein referred to as "Lead Counsel"). The Court notes that Lead Counsel have on several occasions been appointed class counsel for the purpose of settlement. (Moore Decl. Exs. 1–2, ECF No. 56-2, at ECF pp. 8–18.) *See also, e.g., Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 278 (E.D.N.Y. 2019) (appointing Reese LLP as class counsel); *Cicciarella v. Califia Farms, LLC*, No. 19-CV-8785 (CS), 2020 WL 1320866, at *2 (S.D.N.Y. Mar. 20, 2020) (appointing both Reese LLP and Sheehan & Associates as class counsel); *Sharpe v. A&W Concentrate Co.*, No. 19-CV-768 (BMC), 2021 WL 3721392, at *11 (E.D.N.Y. July 23, 2021) (same). Both the pleadings and motion papers demonstrate a thorough investigation by Lead Counsel into the underlying facts and applicable law. (*See generally* Am. Compl., ECF No. 55-5; Mem. in Supp., ECF No. 56-1.) Lead Counsel also attended a full-day mediation and a second mediation to work towards a settlement. (Mem. in Supp., ECF No. 56-1, at 2; *see also* Fairness Hearing, ECF No. 59, at 17:18–25.)

Plaintiffs additionally note that "the Parties have engaged in meaningful and extensive discovery" in this case prior to agreeing to the settlement, a fact that supports the conclusion that Lead Counsel has adequately represented the interests of the proposed class. (*Id.* at 2; *see also* Fairness Hearing, ECF No. 59, at 8:18–9:7.) In light of Lead Counsel's experience and efforts in this case to investigate and substantiate the

12

alleged violations, the Court finds that Plaintiffs are being represented by "qualified, experienced" legal counsel. *Cordes*, 502 F.3d at 99.

  b. <u>Arm's Length Negotiation</u>

"A class settlement reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation is entitled to a presumption of fairness." *Rosenfeld*, 2021 WL 508339, at *5 (quotation marks omitted). Likewise, "a court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato*, 236 F.3d at 85.

  As to the parties' selected mediator, Jill Sperber, several courts have held that Ms. Sperber's involvement has supported a finding that class-action settlement agreements were fair. *See Hesse v. Godiva Chocolatier, Inc.*, No. 19-CV-972 (AJN), 2021 WL 11706821, at *3 (S.D.N.Y. Oct. 26, 2021); *Hickcox-Huffman v. US Airways, Inc.*, No. 10-CV-5193 (VKD), 2019 WL 1571879, at *3 (N.D. Cal. Apr. 11, 2019). Additionally, as noted above, Plaintiffs represent that the mediation was one full day session and that the parties needed a second session and a mediator's proposal to come to an agreement. (Mem. in Supp., ECF No. 56-1, at 2.) Based on the record in this case, there is no "'evidence or indicia suggesting that the negotiations were collusive.'" *Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 WL 836773, at *4 (S.D.N.Y. Mar. 18, 2022) (quoting *Simerlein v. Toyota Motor Corp.*, No. 17-CV-1091 (VAB), 2019 WL 1435055, at *13 (D. Conn. Jan. 14, 2019)). The Court therefore finds that the parties' proposed settlement was the result of arm's length negotiations.

2. *Substantive Factors*

   a. <u>Adequate Relief</u>

      i. <u>*Costs, Risks, and Delay of Trial and Appeal*</u>

The first factor in assessing whether the proposed settlement provides adequate relief for the putative class is an evaluation of the "costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). This factor "'subsumes several *Grinnell* factors,' including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial" (factors 1, 4, 5, and 6). *Rosenfeld*, 2021 WL 508339, at *5 (quoting *Payment Card*, 330 F.R.D. at 36). Put simply, courts must assess whether the proposed settlement "'results in substantial and tangible present recovery, without the attendant risk and delay of trial.'" *Id.* (quoting *Payment Card*, 330 F.R.D. at 36).

Plaintiffs have submitted the parties' proposed settlement agreement, which indicates that the settlement amount is $4 million. (*See* Settlement Agreement, ECF No. 55, ¶ 2.48.) Plaintiffs represent that without approval of the settlement agreement, litigation would resume, including possible "contested class certification (and possibly decertification) proceedings and appeals, including competing expert testimony and contested *Daubert* motions; further costly discovery . . . ; costly merits and class expert reports and discovery; and trial." (Mem. in Supp., ECF No. 56-1, at 10.) The parties agree that litigation would be extremely costly and time-intensive. (*See* Fairness Hearing, ECF No. 59, at 23:14–16, 23:25–24:2.) As to the "substantial risks" of continued litigation, Plaintiffs point to the risk of establishing liability and damages, noting that "Old Lyme continues to deny all of Plaintiffs' allegations, and should this matter proceed, it will vigorously defend itself on the merits," as well as the risks of maintaining the class action through trial. (Mem. in Supp., ECF No. 56-1, at 12.)

Defendant confirmed this position at the Fairness Hearing. (Fairness Hearing, ECF No. 59, at 24:3–15.)

The Court agrees that the costs, risks, and likely duration of continuing to litigate this matter are significant and that a settlement would result in a tangible present recovery. This factor therefore weighs in favor of preliminary approval of the parties' proposed settlement.

*ii.* *Effectiveness of Proposed Method of Distributing Relief*

The Court next evaluates the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "An allocation formula need only have a reasonable, rational basis" and "need not be perfect." *Payment Card*, 330 F.R.D. at 40 (quotation marks omitted). As to claims processing, the proposed method should "'deter or defeat unjustified claims' without imposing an undue demand on class members." *Rosenfeld*, 2021 WL 508339, at *6 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

The Settlement Agreement provides that each "Class Member who submits a valid claim, with a proof of purchase, shall receive $5.00 for the first product claimed and $0.50 for each additional product claimed that is submitted with a proof of purchase," with no limit on the number of products claimed with a proof of purchase, and that each "Class Member who submits a valid claim, without a proof of purchase, shall receive $5.00 for the first product claimed and $0.50 for each additional product claimed up to a maximum of ten (10) additional products claimed, for a total of $10.00." (Settlement Agreement, ECF No. 55, ¶ 3.4(a)–(b) (bolding and capitalization modified).) Plaintiffs note that "all Class Members are eligible to receive the same relief" and that "[a]ll Class Members are treated equally" in the Settlement Agreement. (Mem. in Supp., ECF No. 56-1, at 16.) Class members must submit valid and timely claim forms either at

the settlement website or by mail to receive a disbursement from the settlement fund. (Revised Long Form Notice, ECF No. 57-3, at 4.) "This allocation plan appears to be rational and fair, as it treats class members equitably while taking into account variations in the magnitude of their injuries." *Rosenfeld*, 2021 WL 508339, at *6. Likewise, it appears that the claims processing method imposes a minimal burden on claimants and will adequately filter out unjustified claims to settlement funds. The Court therefore finds that the proposed methods of processing claims and distributing relief are rational and fair.

### iii. *Proposed Award of Attorneys' Fees*

The third factor in the evaluation of whether the settlement provides adequate relief is an assessment of "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). "Courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), (hereinafter "*Visa U.S.A.*") (quoting *Goldberger*, 209 F.3d at 50).

Here, Lead Counsel intends to "apply to the Court for an award of its attorneys' fees in a total amount not to exceed one-third (1/3) of the Settlement Fund or $1,333,333.33" and will "separately apply for the reimbursement of costs and expenses." (Settlement Agreement, ECF No. 55, ¶ 5.1; *see also* Mem. in Supp., ECF No. 56-1, at 4.) "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness" — particularly "in cases with funds of less than $10 million." *Rosenfeld*, 2021 WL 508339, at *6 (quotation marks omitted). Assuming that Lead Counsel's request for litigation expenses is

documented and substantiated, the Court finds that the requested award for attorneys' fees will likely be found to be reasonable.[6]

> iv.    _Other Agreements_

The fourth factor requires courts to consider "any agreement required to be identified under Rule 23(e)(3)," i.e., "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). Rule 23(e)(3) is aimed at revealing "undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others," namely, the representative plaintiffs or their attorneys. Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment; _see also_ David F. Herr, Annotated Manual for Complex Litigation § 21.631 (4th ed. 2022) ("Requiring the parties to file the complete agreement might elicit comments from class members and facilitate judicial review.").

Here, both parties represent that "[t]here are no other agreements amongst the parties." (Mem. in Supp., ECF No. 56-1, at 15; _see also_ Fairness Hearing, ECF No. 59, at 29:19–30:4.)

> b.    Equitable Treatment

The proposed settlement must "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In making this assessment, "the court may weigh

---

[6] The Court notes that Lead Counsel's requested award is, of course, subject to modification at final settlement approval. _See Rosenfeld v. Lenich_, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *7 (E.D.N.Y. Feb. 11, 2021). Lead Counsel should be prepared to submit contemporaneous time records to facilitate a cross-check against the lodestar. _See In re PPDAI Grp. Inc. Secs. Litig._, No. 18-CV-6716 (TAM), 2022 WL 198491, at *14–17 (E.D.N.Y. Jan. 21, 2022); _see also Marion S. Mishkin L. Off. v. Lopalo_, 767 F.3d 144, 148–49 (2d Cir. 2014) (discussing the "strict rule" that any request for attorneys' fees must be "accompanied by contemporaneous time records" (quotation marks omitted)).

'whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.'" *Rosenfeld*, 2021 WL 508339, at *7 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). As explained above, the Settlement Agreement provides for disbursement to Class Members according to the number of products claimed. "In this way, the agreement appropriately and fairly accounts for . . . point[s] of differentiation among class members' claims." *Id.*

The Court further notes that the proposed settlement agreement contemplates an incentive award to Plaintiffs. Specifically, the Settlement Agreement provides that "Plaintiffs shall apply to the Court for a Service Award in an amount not to exceed $5,000 each (for a total of $10,000), subject to approval by the Court," as compensation for their work representing the Settlement Class Members. (Settlement Agreement, ECF No. 55, ¶ 5.2; *see also* Mem. in Supp., ECF No. 56-1, at 4.) "Incentive awards are not uncommon in class action cases and are within the discretion of the court." *Torres v. Toback, Bernstein & Reiss LLP*, No. 11-CV-1368 (NGG) (VVP), 2014 WL 1330957, at *3 (E.D.N.Y. Mar. 31, 2014) (quotation marks omitted). At this juncture, given the size of the settlement fund, the Court finds it unlikely that a requested award of up to $10,000 total (split between two Plaintiffs) will preclude final settlement approval, assuming

that Plaintiffs demonstrate "special circumstances" for such an award.[7] *Id*. (quotation marks omitted).

c. <u>Stage of Proceedings and Amount of Discovery Completed (*Grinnell* Factor 3)[8]</u>

"This [*Grinnell*] factor requires the Court to consider whether the parties have adequate information about their claims." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012). "To approve a proposed settlement," however, "the Court need not find that the parties have engaged in extensive discovery." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000). The Court need only ensure that the parties have sufficiently investigated the facts such that the settlement is fair and reasonable. *See id.*

The parties have engaged in motion to dismiss practice and discovery, "including interrogatories and requests for production of documents," and Plaintiffs contend that they "have sufficient information to evaluate the terms of the proposed Settlement." (Mem. in Supp., ECF No. 56-1, at 11; *see also* Fairness Hearing, ECF No. 59,

---

[7] Special circumstances include "the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise)," as well as "any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery." *Torres v. Toback, Bernstein & Reiss LLP*, No. 11-CV-1368 (NGG) (VVP), 2014 WL 1330957, at *3 (E.D.N.Y. Mar. 31, 2014) (quotation marks omitted). The reasonableness and amount of the incentive award may also depend on the average amount ultimately paid to similarly situated individual claimants out of the settlement fund. *Cf. id.* at *4 (reducing proposed incentive award based, in part, on estimated compensation to be paid to other class members). Plaintiffs "are encouraged to be mindful of [these] concerns when" making any future request for an incentive award. *Id*.

[8] The second *Grinnell* factor, "the class's reaction to the settlement," cannot be assessed at this time. *Rosenfeld*, 2021 WL 508339, at *3; *see id.* at *4 n.2 (declining to assess this factor at the preliminary approval stage).

9:13–16.) Accordingly, the Court finds that Plaintiffs were adequately informed about their claims prior to reaching a proposed settlement.

d.  <u>Defendant's Ability to Withstand a Greater Judgment (*Grinnell* Factor 7)</u>

"Under the *Grinnell* analysis, the court also considers Defendant's ability to withstand a greater judgment than that provided for in the proposed settlement." *Rosenfeld*, 2021 WL 508339, at *7. Neither party has claimed that the proposed settlement amount approaches the upper limit of Old Lyme's ability to pay. (Fairness Hearing, ECF No. 59, at 35:5–37:7.) The Court notes, however, that a defendant's "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Pinnacle Grp.*, 874 F. Supp. 2d at 201 (quotation marks omitted). Here, rather than focusing on Defendant's ability to pay, the parties crafted the proposed settlement primarily to restore reasonable value to class members based on actual claims of harm, which flow from the allegation that Plaintiffs and the other class members paid a "premium price" in part due to the allegedly misleading product labeling. (Fairness Hearing, ECF No. 59, at 38:3; *see also id.* at 38:2–17; *id.* at 39:1–3.) Defendant further asserts that the settlement may even over-compensate claimants. (*Id.* at 39:9–10.) Accordingly, although the proposed $4 million settlement may be less than Defendant's theoretical capacity to pay, the Court finds that this factor is not likely to preclude settlement approval, because the settlement provides reasonable value based on consumers' actual claims. Accordingly, the Court finds that this factor favors settlement.

e.  <u>Range of Reasonableness of Settlement Fund (*Grinnell* Factors 8 and 9)</u>

The Court next considers "the range of reasonableness of the settlement fund in light of [both] the best possible recovery" and "the attendant risks of litigation." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see Payment Card*, 330 F.R.D. at 47–48 (noting

20

that these "two *Grinnell* factors . . . are often combined for the purposes of analysis"). To calculate the best possible recovery, courts "assume complete victory on both liability and damages as to all class members on every claim asserted against each defendant in the [a]ction." *Payment Card*, 330 F.R.D. at 48 (quotation marks omitted). The risks of litigation include "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Visa U.S.A.*, 396 F.3d at 119 (quotation marks omitted).

To arrive at the proposed settlement amount, Plaintiffs represented that the claim values were based on "a fairly sound estimate of what [any class member's] likely injury would be per product." (Fairness Hearing, ECF No. 59, at 39:1–3.) That said, it is well established that although "a proposed settlement may only amount to a fraction of the potential recovery" that does not "mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n.2. This is because the "best possible recovery" may not be "a realistic" one. *Cagan v. Anchor Sav. Bank FSB*, No. 88-CV-3024 (CPS), 1990 WL 73423, at *13 (E.D.N.Y. May 22, 1990). Accordingly, it remains important to evaluate the settlement amount "in light of the strengths and weaknesses of plaintiffs' case." *Rodriguez v. CPI Aerostructures, Inc.*, No. 20-CV-982 (ENV) (CLP), 2023 WL 2184496, at *16 (E.D.N.Y. Feb. 16, 2023) (quotation marks omitted). Given the risks of litigation described above, and the comparatively small economic injury per unit of chips suffered by the putative class members, the Court finds that the parties' settlement amount falls within a reasonable range.

\*     \*     \*     \*     \*

21

On balance, the Court concludes that an evaluation of both the procedural and substantive factors set forth in Rule 23 and *Grinnell* indicate that the parties' proposed settlement is fair and reasonable.

## II. Likelihood of Class Certification

### A. Legal Standards

"In order to conclude that giving notice to the putative class is justified, the court must also determine that it will likely be able to certify the class for purposes of judgment on the proposal" under Rule 23(a) and (b). *Rosenfeld*, 2021 WL 508339, at *8. It is the burden of the party seeking class certification to "affirmatively demonstrate" compliance with these rules. *In re Am. Int'l Grp., Inc. Secs. Litig.*, 689 F.3d 229, 237 (2d Cir. 2012) (quotation marks omitted).

Rule 23(a) sets forth the familiar "four prerequisites for class certification": (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Rosenfeld*, 2021 WL 508339, at *8; *see* Fed. R. Civ. P. 23(a). "In addition to the explicit requirements of Rule 23(a), the class must satisfy the implied requirement of ascertainability." *Payment Card*, 330 F.R.D. at 50 (citing *In re Petrobras Secs.*, 862 F.3d 250, 266 (2d Cir. 2017)).

Rule 23(b) "lays out three alternative 'types' of class actions that may be maintained." *Rosenfeld*, 2021 WL 508339, at *9. Relevant here, Plaintiffs seek certification under Rule 23(b)(3), which "requires both that (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and that (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Payment Card*, 330 F.R.D. at 50 (quoting Fed. R. Civ. P. 23(b)(3)). (*See* Mem. in Supp., ECF No. 56-1, at 10–12.)

### B. Analysis

#### 1. *Rule 23(a) Requirements*

##### a. <u>Numerosity</u>

"The numerosity requirement mandates that the class be 'so numerous that joinder of all members is impracticable.'" *In re Sadia, S.A. Secs. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 23(a)(1)). The "inquiry is not strictly mathematical but must take into account the context of the particular case." *Penn. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *see also id.* (listing factors to consider). As a general rule, when a class consists of forty or more members, numerosity is presumed. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, Plaintiffs assert that "there is no dispute that hundreds of thousands of people nationwide purchased the Products during the Class Period." (Mem. in Supp., ECF No. 56-1, at 16.) Defendants concur. (Fairness Hearing, ECF No. 59, at 40:3–8.) The Second Circuit recognizes that numerosity may be found where the proposed class is "obviously numerous." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). Based on the nature of the claims in this case and Defendant's sales data, Plaintiffs have established a high likelihood that the numerosity requirement will be satisfied at the time of final settlement approval.

##### b. <u>Commonality</u>

"Commonality requires a showing that common issues of fact or law affect all class members." *In re Sadia*, 269 F.R.D. at 304 (citing Fed. R. Civ. P. 23(a)(2)). It "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" not "merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "In other

words, the relevant inquiry is whether a classwide proceeding is capable of 'generat[ing] common *answers* apt to drive the resolution of the litigation.'" *Jacob v. Duane Reade, Inc.*, 602 F. App'x 3, 6 (2d Cir. 2015) (alteration in original) (quoting *Dukes*, 564 U.S. at 350).

The parties agree that the complained-of packaging was "uniform across the United States"; therefore, "any member of the proposed class would have the same central claim: that the [packaging was] misleading or deceptive," and Defendant's conduct "constitutes a 'unitary course of conduct by a single system.'" *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484 (JS) (AKT), 2017 WL 9480894, at *9 (E.D.N.Y. Mar. 9, 2017) (quoting *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 565 (S.D.N.Y. 2014)), *report and recommendation adopted*, 2017 WL 1169552 (S.D.N.Y. Mar. 29, 2017). Furthermore, because the packaging was uniform, "the question of whether [it was] false or misleading will generate common answers across the proposed class." *Id.*

Given the nature of the allegations in this case, which center on misleading product labeling, the Court concludes that the pleadings establish that the class members suffered the same injury. As a result, commonality is present.

c. <u>Typicality</u>

"[T]he typicality requirement[] is satisfied by a showing that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Deutsche Bank AG Secs. Litig.*, 328 F.R.D. 71, 80 (S.D.N.Y. 2018) (quoting *In re Flag Telecom Holdings, Ltd. Secs. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). It "is usually met" where "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). In this case, where the complained-of advertising was uniform, "Plaintiffs and the proposed class would

24

therefore present similar legal arguments in prosecuting their cases." *Elkind*, 2017 WL 9480894, at *10. The Court finds that Plaintiffs have demonstrated the typicality requirement in this case.

### d. Adequacy of Representation

To satisfy the adequacy requirement, "[p]laintiffs must meet two standards — that 'class counsel . . . be qualified, experienced[,] and generally able to conduct the litigation,' and that 'the class members . . . not have interests that are antagonistic to one another.'" *Balestra v. ATBCOIN LLC*, No. 17-CV-10001 (VSB), 2022 WL 950953, at *4 (S.D.N.Y. Mar. 29, 2022) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). Based on the Court's determinations *supra* regarding the parallel requirements under Rule 23(e)(2), the Court finds that the proposed class is adequately represented by Plaintiffs and Lead Counsel, and that the adequacy requirement will likely be found at the time of final settlement approval and judgment.

### e. Ascertainability

"[A] class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Secs.*, 862 F.3d at 257. While district courts "have expressed conflicting views on whether putative classes are ascertainable when consumers are unlikely to retain receipts or other records of purchase," the Court concludes that the class is reasonably ascertainable here. *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 66 (E.D.N.Y. 2015). The class is clearly defined. (Am. Compl., ECF No. 55-5, ¶ 56.) Class members may self-identify, must swear under penalty of perjury that any claims without proof of purchase are accurate, and cannot successfully claim more than 10 purchases per household without supporting documentation. (*See* Settlement Agreement, ECF No. 55, ¶ 3.4.) With these safeguards in place, proof of purchase is not required. "To require receipts [in circumstances like the

instant case] 'would render class actions against producers almost impossible to bring.'"
*Belfiore*, 311 F.R.D. at 66–67 (quoting *Ebin*, 297 F.R.D. at 567). The Court finds that the
class is sufficiently ascertainable because the proposed settlement agreement clearly
outlines class membership and balances opportunities for self-identification with
reasonable safeguards against fraud.

2.  *Rule 23(b)(3) Requirements*

"Rule 23(b)(3) imposes two additional burdens on plaintiffs attempting to
proceed by class action, namely, predominance and superiority." *Sykes v. Mel S. Harris
& Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015); *see* Fed. R. Civ. P. 23(b)(3) (requiring "that
the questions of law or fact common to class members predominate over any questions
affecting only individual members, and that a class action is superior to other available
methods for fairly and efficiently adjudicating the controversy"). These inquiries are
ordinarily guided by four factors:

> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the
> controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation
> of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). However, in the settlement context, "'[s]ome inquiries essential
to litigation [of] class certification,' including the issue of 'manageability — how the
case will or can be tried, and whether there are questions of fact or law that are capable
of common proof,'" are no longer relevant. *Rosenfeld*, 2021 WL 508339, at *10 (quoting *In
re Am. Int'l Grp.*, 689 F.3d at 239). The other factors, however, "demand undiluted, even
heightened, attention." *In re Am. Int'l Grp.*, 689 F.3d at 239 (quotation marks omitted).

a.   Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Again, because the prospect of settlement obviates the manageability concerns ordinarily assessed as part of this inquiry, the focus is instead whether "'the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Payment Card*, 330 F.R.D. at 55 (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)); *see also Rosenfeld*, 2021 WL 508339, at *10.

The Supreme Court has observed that "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud." *Amchem Prods., Inc.*, 521 U.S. at 625. Here, class members' claims, i.e., that Defendant's product labeling regarding non-GMO ingredients was deceptive and harmed consumers, involve similar, if not identical, questions of law and fact. To the extent there are unique issues as to each class member, for instance, the number of products purchased by each class member, the common questions are much "more substantial." *Payment Card*, 330 F.R.D. at 55 (quotation marks omitted). Accordingly, the Court finds that common questions of law and fact predominate over individual questions, and the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.

b.   Superiority

"Rule 23(b)(3)'s superiority requirement may be satisfied when 'the costs of bringing individual actions outweigh the expected recovery,' and when consolidation 'will achieve significant economies of time, effort and expense, and promote uniformity

of decision.'" *Rosenfeld*, 2021 WL 508339, at \*10 (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013)). "The superiority requirement is designed to avoid repetitious litigation and possibility of inconsistent adjudications." *Payment Card*, 330 F.R.D. at 57 (quotation marks omitted). Additionally, "[c]ourts have found that the superiority requirement is satisfied" when "potential class members are both significant in number and geographically dispersed." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 661 (S.D.N.Y. 2015) (quotation marks omitted).

Here, given that Plaintiffs assert that the "cost to purchase any of the Products is less than \$5.00," and that the affected injury concerns "premium" pricing, which resulted in a relatively small injury to class members per purchase, individual actions would certainly prove less efficient than a class-wide proceeding. (Mem. in Supp., ECF No. 56-1, at 20.) Given the numerosity and geographic dispersion of potential class members, "there is great utility in resolving the claims of the many [members of] the class through the class action mechanism." *Meredith Corp.*, 87 F. Supp. 3d at 661. Furthermore, in light of these factors, "[c]lass adjudication of this case is superior to individual adjudication because it will conserve judicial resources." *Zeltser v. Merrill Lynch & Co.*, No. 13-CV-1531 (FM), 2014 WL 4816134, at \*3 (S.D.N.Y. Sept. 23, 2014). The Court therefore finds it likely that the superiority requirement will be met.

\* \* \* \* \*

For the above reasons, the Court finds that Plaintiffs have demonstrated a good likelihood of class certification. Having concluded that Plaintiffs have also demonstrated a likelihood of final settlement approval, the Court respectfully recommends granting preliminary settlement approval and finding that notice to "all class members who would be bound by the proposal" is justified. Fed. R. Civ. P. 23(e)(1)(B).

### III. Notice

Under Rule 23, notice may be issued by either "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). Additionally:

> The notice must clearly and concisely state in plain, easily understood language:
>
> > (i) the nature of the action;
> >
> > (ii) the definition of the class certified;
> >
> > (iii) the class claims, issues, or defenses;
> >
> > (iv) that a class member may enter an appearance through an attorney if the member so desires;
> >
> > (v) that the court will exclude from the class any member who requests exclusion;
> >
> > (vi) the time and manner for requesting exclusion; and
> >
> > (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* Ultimately, "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Visa U.S.A.*, 396 F.3d at 113–14. Courts in this Circuit have found that a settlement notice is substantively sufficient "when it describe[s] the terms of the settlement generally, inform[s] the class about the allocation of attorneys' fees, and provide[s] specific information regarding the date, time, and place of the final approval hearing." *Payment Card*, 330 F.R.D. at 58–59 (quotation marks omitted); *see id.* (collecting cases). Courts are concerned both procedurally and substantively with whether the notice plan will provide "'class members the best notice that is practicable under the circumstances.'" *Vargas v. Capital One Financial Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014) (quoting Fed. R. Civ. P. 23(c)(2)(B)); *see also id.* (stating that notice to class members must be "sent by an adequate physical delivery method" and "fairly apprise

the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings").

### A. The Notice Plan

Plaintiffs request that the Court appoint Epiq to administer the notice process. (Mem. in Supp., ECF No. 56-1, at 4.) To support this request, Plaintiffs submitted a declaration from Cameron Azari, the Senior Vice President of Epiq and "Director of Legal Notice for Hilsoft Notifications, a firm that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans" and that "is a business unit of Epiq." (Azari Decl., ECF No. 56-3, ¶ 3.) Azari represents that Epiq "expect[s] the Notice Plan will reach approximately 70% of the Settlement Class with a national digital/internet notice program[,] . . . [which] will be enhanced further by a newspaper publication, internet sponsored search listings, an informational release, and a Settlement Website." (*Id.* ¶ 18.) The Notice Plan consists of the following components: (1) a digital notice campaign; (2) newspaper publication; (3) sponsored search listings; and (4) an informational release via PR Newswire. (*Id.*) The proposed Preliminary Approval Order also mandates that Epiq provide Class Members notice of the Settlement by "establish[ing] a website that will inform Settlement Class Members of the terms of the Settlement Agreement." (Proposed Order, ECF No. 55-6, at 5–6.)

The digital notice campaign will run for approximately six weeks and includes advertising on the Google Display Network, "which represents thousands of digital properties across all major content categories," and which campaign will target "selected target audiences" and will "encourage participation by Settlement Class Members[ ]by linking directly to the Settlement Website." (Azari Decl., ECF No. 56-3, ¶¶ 26, 30.) Digital notices will also be placed on Facebook and Instagram. (*Id.* ¶ 27.)

Azari states that the campaign is expected to generate more than 338 million impressions. (*Id.* ¶ 30.)

The plan for newspaper publication would occur "[i]f the Court orders publication notice pursuant to [California] Government Code section 6064." (*Id.* ¶ 31.) In that case, the plan will include "four insertions over four weeks" in the local editions of *USA Today* in San Francisco, Los Angeles, and Phoenix, which publication has a circulation of over 14,000. (*Id.*) The notice plan also includes sponsored search listings on Google, Yahoo!, and Bing search engines. (*Id.* ¶ 32.) The search listings will be directed nationwide and will link to the Settlement Website. (*Id.*) In addition, an informational release will be issued using PR Newswire, which is expected to reach "approximately 5,000 general media (print and broadcast) outlets . . . across the United States as well as approximately 4,500 websites, online databases, internet networks, and social networking media." (*Id.* ¶ 33.) The notice plan calls for an additional distribution to "approximately 1,000 contacts in the Food Industry, General Foods & Nutrition and Organic Foods categories." (*Id.*)

## B. Notice Content

Plaintiffs have submitted a revised long form notice for the Court's review. (*See* Revised Long Form Notice, ECF No. 57-3.) This notice sets forth an extensive description of the action and claims process and addresses the concerns the Court flagged in the fairness hearing. (*Compare id. with* Fairness Hearing, ECF No. 59, at 50:9–63:9.) Having carefully reviewed the parties' filings, the Court finds that the proposed notices contain the information required by Rule 23, set forth "in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs have also submitted the following proposed schedule of events:

| Event | Deadline for Compliance |
|---|---|
| Deadline for dissemination of notice to the Settlement Class Members | No later than 30 calendar days after the entry of the Preliminary Approval Order |
| Deadline for filing papers in support of Class Counsel's application for attorneys' fees and expenses | No later than 70 calendar days prior to the Final Approval Hearing |
| Deadline for receipt of objections and opt-outs or in response to objections | No later than 35 calendar days prior to the Final Approval Hearing |
| Deadline for filing papers in support of final approval of Settlement | No later than 28 calendar days prior to the Final Approval Hearing |
| Deadline for Settlement Class Members to file a Notice of Intention to appear at the Fairness Hearing | No later than 15 calendar days prior to the Final Approval Hearing |
| Deadline for Settlement Administrator to file a report to the Court | No later than 15 calendar days prior to the Final Approval Hearing |
| Fairness Hearing | At the Court's earliest convenience at least 145 calendar days after the entry of the Preliminary Approval Order |

(Mem. in Supp., ECF No. 56-1, at 24; Revised Proposed Preliminary Approval Order, ECF No. 57-5, at pp. 12–13.)

The Court finds that Plaintiffs' proposed schedule and manner of notice as reflected in their revised submissions comply with Rule 23 and adequately afford due process. Notice should be ordered as proposed by the parties, including distribution of the revised long form notice and online notices. (*See* Revised Long Form Notice, ECF No. 57-3.)

## IV. Appointment of Class Counsel

"When a district court certifies a class, it must appoint class counsel." *Payment Card*, 330 F.R.D. at 58. Under Rule 23(g)(1)(A), the Court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law;

32

and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). "The adequacy of counsel requirement is [ordinarily] satisfied where the class attorneys are experienced in the field or have demonstrated professional competence in other ways, such as by the quality of the briefs and the arguments during the early stages of the case." *Mendez v. MCSS Rest. Corp.*, No. 16-CV-2746 (NGG) (RLM), 2019 WL 2504613, at *13 (E.D.N.Y. June 17, 2019) (quotation marks omitted).

As discussed above, the filings in this case show that Lead Counsel has engaged in significant investigation of the underlying claims, that they are experienced in class action litigation and are knowledgeable in the applicable area of law, and that they have the resources necessary to represent the class. The Court therefore respectfully recommends appointment of Lead Counsel as class counsel for the purposes of settlement.

## CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for preliminary settlement approval and leave to file an amended complaint be granted. (Mot., ECF No. 56.) The Court further recommends that (1) the settlement class be preliminarily certified for the purposes of settlement; (2) Plaintiffs be appointed as the class representatives; (3) Reese LLP and Sheehan & Associates be appointed as class counsel; (4) the settlement agreement be preliminarily approved; (5) the notice plan be approved; (6) Epiq be appointed as settlement administrator and be directed to

commence the notice plan; (7) a fairness hearing be scheduled[9] to consider final approval of the settlement; and (8) the revised Proposed Preliminary Approval Order be entered (*see* ECF No. 57-5).

*    *    *    *    *

This report and recommendation will be filed electronically. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Eric N. Vitaliano, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.*, *Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated:  Brooklyn, New York
        October 30, 2024

_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

---

[9] Alternatively, the undersigned Magistrate Judge respectfully recommends referring the parties to this Court for scheduling of the final approval hearing.